# In the United States Court of Federal Claims

No. 09-158L
(Filed: February 8, 2012)

| | |
|---|---|
| MARK S. RASMUSON and BRENDA S. RASMUSON, husband and wife, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | **Rails to Trails; Construction of Fee Deeds under Iowa Law; No Taking Where Railroad Owns Right-of-way in Fee** |

*Thomas S. Stewart*, Kansas City, MO, for plaintiffs.  *Elizabeth G. McCulley*, Kansas City, MO, and *Steven M. Wald*, and *J. Robert Sears*, St. Louis, MO, of counsel.

*Frank J. Singer*, U.S. Department of Justice, Washington, DC, with whom was *Ignacia S. Moreno,* Assistant Attorney General, for defendant.

## O P I N I O N

**FIRESTONE**, *Judge*

Pending before the court are the parties' motions for partial summary judgment in this "Rails to Trails" case arising from the creation of a recreational trail in Cerro Gordo County, Iowa pursuant to the "railbanking" provision of the National Trails System Act Amendments of 1983.  16. U.S.C. § 1247(d) (2006) ("Trails Act").  The plaintiffs are landowners who own property adjacent to the recreational trail and who claim that the United States affected takings of their property interests under the Takings Clause of the

Fifth Amendment.  The case involves a total of 124 parcels of land.  The defendant, the

United States ("the government"), has conceded liability in connection to 89 parcels.  The

plaintiffs agreed to dismiss their claims with regard to two parcels.[1]  At issue in the

pending motions are the plaintiffs' claims for the 33 remaining parcels of land stemming

from eight original deeds to the railroad for which the government disputes takings

liability on various grounds arising under Iowa state law.  For the reasons discussed

below, the government's cross-motion for summary judgment is **GRANTED-in-PART**

**and DENIED-in-PART** and the plaintiffs' motion for summary judgment is

**GRANTED-in-PART and DENIED-in-PART**.

---

[1] The plaintiffs submitted two motions for summary judgment, ECF Nos. 57 and 60, each
pertaining to two separate sets of plaintiffs.  The first set, those associated with ECF No. 57, own
properties adjoining segments of the rail corridor the railroad acquired through condemnation.
The second set of plaintiffs, those associated with ECF No. 60, own properties generally
adjoining segments of the rail corridor that the railroad acquired through deeds.  The government
conceded liability for 89 parcels either because they were condemned easements or conveyed
through deeds granting easements limited to railroad purposes.  Def.'s Cross-Mot. Summ. J., Ex.
B, ECF No. 65.  All but six of the 89 parcels for which the government conceded liability were
involved in the first motion; therefore, this opinion involves issues associated with the second
motion and the subsequent briefing, which incorporated both of the plaintiffs' initial motions.
Both motions are therefore addressed in this opinion.  The plaintiffs agreed to dismiss two
parcels (41.D and 43.A) on adjacency grounds.  Pls.' Resp. at 29-30, ECF No. 69.  The
government also originally argued that the extent of any liability would be limited to the taking
of a "railbanking easement."  The government has acknowledged that this court has rejected the
same argument in <u>Jenkins v. United States</u>, 102 Fed. Cl. 598, 612-19 (2011).  Def.'s Suppl. Brief
at 3, ECF No. 93.  It is rejected here as well.  The government is liable for a taking of plaintiffs'
property interests without limitation in connection with the 89 parcels identified in Exhibit B of
its cross-motion for summary judgment.

## I.      BACKGROUND

### A.      The Trails Act and Relevant Regulatory Framework

This court has previously explained the operation of the Trails Act in <u>Macy Elevator, Inc. v. United States</u>, 97 Fed. Cl. 708 (2011).  In brief, the Trails Act can be summarized as follows:

> Congress enacted the Trails Act to address the national problem of a reduction in rail tracks.  <u>Preseault v. Interstate Commerce Comm'n</u>, 494 U.S. 1, 5 (1990) ("<u>Preseault I</u>").  The Trails Act authorizes the Surface Transportation Board ("STB") to preserve railroad corridors or rights-of-way not currently in use for train service for possible future rail use by converting those rights-of-way into recreational trails.  <u>Id.</u> at 5-6; 16 U.S.C. § 1241 (2006).  In essence, the Trails Act allows a railroad to relinquish responsibility for a rail line by transferring the corridor to an entity that will use it as a recreational trail.  Although the corridor is not used as a railroad during the period of interim trail use, it remains intact for potential future use for rail service.  This process is called "railbanking."

<u>Macy Elevator</u>, 97 Fed. Cl. at 711 (footnote omitted).  Under the Trails Act, the railroad and the trail provider are afforded 180 days to negotiate a railbanking and interim trail use agreement.  <u>Caldwell v. United States</u>, 391 F.3d 1226, 1229-30, 1233 (Fed. Cir. 2004) ("<u>Caldwell II</u>").  Where the railroad and the trail operator reach an agreement for recreational trail use, the STB will retain its jurisdiction over the rail line and the rail line will be railbanked for possible future reactivation for rail use.  <u>Id.</u> at 1229.  In such cases, the rail corridor will not be returned to the underlying fee owner:

> Before a railroad corridor may be converted into a recreational trail, the railroad must either initiate abandonment proceedings with STB under 49 U.S.C. § 10903 (2006) (where the railroad has recently had operating train service) or seek an exemption from the ordinary abandonment procedures under 49 U.S.C. § 10502 (2006) (where the railroad has had no local rail

service for at least two years).[2]  Caldwell v. United States, 57 Fed. Cl. 193,
195 (2003) ("Caldwell I"), aff'd, 391 F.3d 1226 (Fed. Cir. 2004)
("Caldwell II").  Under either procedure, abandonment of the rail line and
right-of-way will not be approved by the STB if a qualified trail provider
submits to the STB a request to use the right-of-way as a recreational trail.
If the trail provider submits a statement of willingness to assume financial
and legal responsibility to the STB and the railroad, the STB will, in the
case of an operating railroad, issue a Certificate of Interim Trail Use or
Abandonment ("CITU") which preserves the STB's jurisdiction over the
rail corridor while the parties negotiate an Interim Trail Use Agreement.
See 49 C.F.R. § 1152.29(c).  In cases involving the exemption procedure,
such as the present case, the STB issues a Notice of Interim Trail Use or
Abandonment ("NITU"), which also preserves the STB's jurisdiction over
the rail corridor, allows the railroad to discontinue operations and remove
track and equipment, and affords the railroad and the trail provider 180
days to negotiate a railbanking and interim Trails Act Agreement.  Caldwell
II, 391 F.3d at 1229-30; 49 C.F.R. § 1152.29(d).  During this period, the
railroad will also negotiate an agreement for the transfer of the corridor to
the trail operator.  "If an agreement is reached, the NITU [or CITU]
automatically authorizes the interim trail use.  If the [STB] takes no further
action, the trail sponsor then may assume management of the right-of-way,
subject only to the right of a railroad to reassert control of the property for
restoration of rail service."  Caldwell I, 57 Fed. Cl. at 195 (internal citations
omitted); see also 49 C.F.R. § 1152.29(d)(2).  If an agreement is not
reached, the railroad will be allowed to abandon the line, at which time the

---

[2] STB's regulations provide:

> An abandonment or discontinuance of service or trackage rights is exempt if the
> carrier certifies that no local traffic has moved over the line for at least 2 years
> and any overhead traffic on the line can be rerouted over other lines and that no
> formal complaint filed by a user of rail service on the line (or a state or local
> government entity acting on behalf of such user) regarding cessation of service
> over the line either is pending with the Board or any U.S. District Court or has
> been decided in favor of the complainant within the 2-year period.  The complaint
> must allege (if pending), or prove (if decided) that the carrier has imposed an
> illegal embargo or other unlawful impediment to service.

49 C.F.R. § 1152.50(b) (2010).  The STB must also find that the line is not necessary to carry out
the government's rail transportation policy, the line is of limited scope, and continued regulation
is unnecessary to protect shippers from abuse of market power.  Id. § 1152.50(c).  The
railbanking process works in largely the same manner, whether the proceeding is exempt from
the abandonment process or non-exempt.

STB's jurisdiction over the right-of-way terminates.[3]

Macy Elevator, 97 Fed. Cl. at 711 (footnotes omitted or renumbered from the original).

**B.      Undisputed Facts**

The 15-mile stretch of a former railroad corridor located in Cerro Gordo County

Iowa and at issue in this case was originally acquired by the Mason City and Fort Dodge

Railroad Company ("Mason City RR") in the late 1880s.  Mason City RR acquired its

rights in the right-of-way by deed and by condemnation.  Where Mason City RR obtained

land by deed, it generally used a standard form deed which provided in pertinent part as

follows:

RIGHT OF WAY DEED

> The grantors . . . in consideration of [amount] Dollars in hand paid, the receipt whereof is hereby acknowledged, do hereby sell and convey unto the MASON CITY AND FORT DODGE RAIL ROAD COMPANY, the following described tract, piece or parcel of land situate, lying and being in the County of Cerro Gordo and State of Iowa, bounded and described as follows viz:  A strip of land 100 feet in width, being 50 feet in width on each side of the center line of said Rail Road as the same has been located over and across the [legal description]. . . . TO HAVE AND TO HOLD the premises above described, with the appurtenances, unto said MASON CITY, AND FORT DODGE RAIL ROAD COMPANY, and its assigns, forever.

Pls.' Mot. Summ. J. at 28-29, ECF No. 61 (emphasis added).  The 33 properties at issue

in this case are adjacent to the rail corridor Mason City RR acquired through eight

---

[3] As explained above, issuance of a CITU or a NITU is an alternative to the standard process of approving the railroad's application for abandonment.  Where the STB issues an order authorizing the railroad to abandon the line and the railroad carries out the abandonment, the STB's jurisdiction over the railroad right-of-way terminates.  Hayfield N. R.R. Co. v. Chicago & N.W. Transp. Co., 467 U.S. 622, 633-34 (1984); Preseault I, 494 U.S. at 7.

original deeds granted in 1886 and 1887.  Five of the eight deeds are identical to the

above-cited form deed.[4]  The remaining three deeds involve a different form deed or were

handwritten but contain similar granting language as the one reproduced above.[5]  In

addition, five of the deeds granted to Mason City RR were granted only after Mason City

RR had posted notice under Iowa law that the subject land was to be condemned.[6]  There

is no evidence of notice or other condemnation activities in connection with the

remaining three deeds.  Union Pacific ultimately acquired the railroad becoming the

successor-in-interest to Mason City RR.

On February 10, 2005, after Union Pacific ceased operations through the subject

corridor, the railroad filed a petition for exemption from formal abandonment of the rail

line with the STB.  In response to Union Pacific's exemption petition, the Iowa Trails

---

[4] The five original deeds conveying property interests to the Railroad using this form are the deeds located at book 36, page 184 ("Madison deed"), book 36, page 69 ("Emsley deed"), book 36, page 144 ("Brett deed"), UP 60 ("Kamran deed"), and book 36, page 131 ("Browne deed"), which included a handwritten alteration.

[5] The three original deeds conveying property interests to the Railroad using deeds other than the form deed usually used in the transactions with Mason City RR are the deeds located at book 36, page 68 ("Burchinal deed"), book 55, page 184 ("second Burchinal deed"), and book 36, page 196 ("Stone deed").

[6] The plaintiffs state that they have been unable to locate the notices of condemnation for the Brett, Kamran, and Browne deeds.  Pls.' Mot. Summ. J. at 28.  The government notes, and the plaintiffs do not dispute, that the notices provided by plaintiffs do not describe the areas described in the Brett deed and by the deed located at book 36, page 185.  Pls.' Resp. Def.'s FOF at 6, ECF No. 70.  As illustrated in the preceding two footnotes, the deed located at book 36, page 185 does not appear to be at issue in this case.  Similarly, it is unclear why, given plaintiffs' statement that they were unable to locate notices for the Kamran and Browne deeds, these deeds were not discussed by the government along with the Brett deed and the deed located at book 36, page 185.  In any case, because the court finds that all of the deeds (with the exception of an easement additionally granted in the Burchinal deed) convey fee interest, these apparent inconsistencies do not affect the court's liability findings.

Council filed a petition with the STB indicating its interest in negotiating a trail use agreement with Union Pacific.  Based on these representations, the STB issued a NITU on June 1, 2005.  On or around October 5, 2006 the Iowa Trails Council and Union Pacific entered into and executed a Trail Use Agreement and Union Pacific transferred its interest in the right-of-way to the Iowa Trails Council.

The primary dispute between the plaintiffs and the government concerns the nature of the property rights obtained by Mason City RR when it acquired the rail corridor through the original eight deeds that were later transferred to Union Pacific.  The government argues that the eight deeds, by their plain terms, clearly transferred fee title to the corridor to Mason City RR meaning that the plaintiffs owning property adjacent to the corridor did not have reversionary interests in the corridor and that there has been, therefore, no taking of any property rights.  The plaintiffs argue that there has been a taking of their reversionary interests because proper construal of the deeds, in light of the Iowa condemnation statute, requires the deeds to be read as granting only "railroad easements" to Mason City RR.  In such circumstances, plaintiffs argue, issuance of the NITU blocked plaintiffs' reversionary interest and resulted in a taking.

Oral argument on the motions was held on February 4, 2013.

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Rule 56(a) of the Rules of the Court of Federal Claims; see also Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-49 (1986); <u>Casitas Mun. Water Dist. v. United States</u>, 543 F.3d 1276, 1283 (Fed. Cir. 2008).  A material fact is one that "might affect the outcome of the suit," and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  In considering the existence of a genuine issue of material fact, a court must draw all inferences in the light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Once the movant has shown that no genuine issue of material fact exists, the party opposing summary judgment must demonstrate that such an issue, in fact, does exist. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  To establish a genuine issue of material fact, a party "must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." <u>Radar Inds., Inc. v. Cleveland Die and Mfg. Co.</u>, 424 F. App'x 931, 936 (Fed. Cir. 2011) (quoting <u>SRI Int'l v. Matsushita Elec. Corp. of Am.</u>, 775 F.2d 1107, 1116 (Fed. Cir. 1985)) (internal quotation omitted).  Where there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant.  <u>Unigene Labs., Inc. v. Apotex, Inc.</u>, 655 F.3d 1352, 1360 (Fed. Cir. 2011) (citing <u>Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.</u>, 520 F.3d 1358, 1360-61 (Fed. Cir. 2008)).  "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." <u>Mingus Constructors, Inc. v. United States</u>, 812 F.2d 1387, 1391 (Fed. Cir. 1987).  With respect to cross-motions for summary judgment, each

motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered. Marriot Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968-69 (Fed. Cir. 2009). Summary judgment is particularly appropriate, where, as here, the issue decided fundamentally concerns questions of law. Huskey v. Trujillo, 302 F.3d 1307, 1310 (Fed. Cir. 2002) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law.")).

**B**.      **The Trails Act and the Fifth Amendment Takings Clause**

It is now well-settled that a Fifth Amendment taking occurs in Rails to Trails cases when the government, through issuance of a NITU, destroys state-defined property rights by converting a railway easement into a recreational trail. Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010). This occurs when trail use falls outside the scope of the original easement, thereby interfering with the landowner's right to reversion of an unencumbered fee. Id. The plaintiffs must establish three basic elements to prove a "taking" in a Trails Act case. First, the plaintiffs must establish that they owned the relevant property on the date of the taking. Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) ("Preseault II"). Second, the plaintiffs must demonstrate that their property is adjacent to the rail corridor. Id. Third, the plaintiffs must establish that the authorization of the recreational trail pursuant to the Trails Act precluded reversion of their fee interest in the rail corridor unencumbered by any trail or rail easement. Id.

These determinations are made pursuant to the relevant state property law.[7]  Caldwell II,

391 F.3d. at 1233.

In the pending motions, the parties have focused their dispute on the third

Preseault II issue—namely whether there has been a taking of reversionary interests in

the railroad corridor.[8]  More specifically, the issue concerns whether the Mason City RR

obtained fee interests or only railroad purpose easements in the corridor adjacent to the

plaintiffs' parcels.  The plaintiffs have conceded that the subject eight deeds, by their

plain terms, conveyed fee title to Mason City RR under the test established by the Iowa

Supreme Court in Lowers v. United States, 663 N.W.2d 408, 411 (2003).  Pls.' Resp. at

21 ("Plaintiffs would not contest the fact that the deeds at issue in this case were fee

deeds if they were standing alone without accompanying Notices of Condemnation.").

The Lowers court considered whether a deed, captioned "Rt. of Way Deed," conveyed

fee interest or an easement limited to railroad purposes.  663 N.W.2d at 410.  The court

held that the title of the deed did not reduce the interest conveyed to an easement limited

to railroad purposes.  Id. at 411.  Lowers further held that "there must be some reference

---

[7] The court will therefore apply, where relevant, Iowa property law in its analysis of the property disputes.

Section 327G.77 of the Iowa Code defines the property interests that adjacent landowners take upon a railroad's abandonment of its right-of-way.  When a railroad's right-of-way is extinguished, those rights pass to the owners of the adjacent property upon abandonment.  Iowa Code § 327G.77 (2009).  If there are different owners of land on either side of the right-of-way, then each owner takes to the center of the right-of-way.  Id.

[8] The parties also dispute whether the plaintiffs make a sufficient showing that Duane C. Mabb, the plaintiff associated with claim 8.C, owned the relevant parcel on the date the STB issued the NITU.  Since the court finds that the government is not liable for a taking of property interests associated with claim 8.C, it does not reach the issue of liability on ownership grounds.

to right-of-way in the language defining the interest being conveyed" in order for the deed to convey an easement.  Id.  Lastly, the Lowers court found that there must be language expressly limiting the conveyance if the deed is to grant any interest less than a fee.  Id.  As stated, all of the remaining eight deeds, aside from the Burchinal deed's easement grant discussed separately, use granting language similar to that used in Lowers.  Because there was no limitation on the conveyances, the deeds' plain language must be read to convey fee interests.

The plaintiffs argue, however, that notwithstanding the plain language of the deeds, the Mason City RR obtained only easements limited to railroad purposes in the rail corridor.  As noted, the plaintiffs argue that the subject deeds must be construed in the context of the condemnation rights provided to railroads under Iowa's condemnation statute.  The plaintiffs argue that when viewed in the context of the Iowa condemnation statute, the eight deeds, despite their plain language, conveyed only railroad purposes easements to Mason City RR.

The parties also dispute the scope of a specific easement conveyed in the Burchinal deed.  The Burchinal deed makes two separate conveyances.[9]  The first conveyance involves the first issue summarized above of whether the deed conveyed fee title to the railroad.  The second conveyance involves the grant of an express easement. With respect to the second conveyance, the parties dispute whether the subject deed conveyed a general easement which would encompass trail use, as the government

---

[9] The plaintiffs dispute whether this deed, in fact, makes two conveyances.  Pls.' Resp. Def.'s PFOF at 7, ECF No. 70.

contends, or whether the easement was limited to railroad purposes, as the plaintiffs assert. If the easement was a general easement there was no taking; if the easement was limited to railroad purposes, however, the issuance of the NITU gave rise to a taking.

By way of background, the court will first discuss Iowa's condemnation statute and then turn to each of the specific issues raised by the motions.

### C.     Iowa's Condemnation Statute

The pertinent provisions of the Iowa condemnation statute in force in 1886 and 1887, the relevant period for the deeds in question, are found in Chapter 4, Section 1241 of Title X of the Iowa Code of 1873, which defines the property interests that railroads were authorized to acquire pursuant to that statute. The statute provides:

TAKING PRIVATE PROPERTY FOR WORKS OF INTERNAL IMPROVEMENT

> Any railway corporation organized in this state, may take and hold, under the provisions of this chapter, so much real estate as may be necessary for the location, construction, and convenient use of its railway, and may also take, remove, and use for the construction and repair of said railway and its appurtenances, any earth, gravel, stone, timber, or other materials, on or from the land so taken; the land so taken otherwise than by the consent of the owners, shall not exceed one hundred feet in width, except for wood and water stations, unless where greater width is necessary for excavation, embankment, or depositing waste earth.

Iowa Stat. 1873, Ch. 4 § 1241. The Iowa Supreme Court has determined that rights-of-way acquired through condemnation are easements limited to railroad purposes. McKinley v. Waterloo R. Co, 368 N.W.2d 131, 133 (Iowa 1985) ("Case law is clear that condemnation of land for railroad right of way creates an easement . . . ."). Section 1244 of the same statute established the general process by which a railroad could condemn

private property without the landowner's consent or where the parties could not agree on

proper compensation:

MANNER OF CONDEMNATION

> If the owner of any real estate, necessary to be taken for either of the
> purposes mentioned in the three preceding sections, refuses to grant the
> right of way, or other necessary interest in said real estate required for such
> purposes, or, if the owner and the corporation cannot agree upon the
> compensation to be paid for the same, the sheriff of the county in which
> said real estate may be situated, shall, upon the application of either party,
> appoint six disinterested freeholders of said county, not interested in a like
> question, who shall inspect said real estate and assess the damages which
> said owner will sustain by the appropriation of his land for the use of said
> corporation, and make report in writing to the sheriff of said county, and if
> said corporation shall, at any time before it enters upon said real estate for
> the purpose of constructing said railway, pay to said sheriff for the use of
> said owner, the sum so assessed and returned to him as aforesaid, it may
> construct and maintain its railway over and across such premises.

Iowa Stat. 1873, Ch. 4 § 1244.  In short, under section 1244, in order for the railroad to

proceed with condemnation, it had to first obtain an appraisal and then deliver the

appraisal amount to the local sheriff before "it may construct and maintain its railway

over and across such premises."  Id.  Under section 1247 of the statute, the railroad also

was required to provide "notice" to landowners who did not live in the same county as

the subject land:

> If the owner of such lands is a non-resident of the county in which the same
> are situate, no demand of the right of way, or other purpose for which such
> lands are desired, shall be necessary, except the publication of a notice
> which may be in the following form[.][10]

---

[10] The statutory form notice included in the code provides the following language:

> For the appropriation of lands for railway purposes.  To (here name each person
> whose land is to be taken or affected,) and all other persons having any interest in,

Iowa Stat. 1873, Ch. 4 § 1247.  The notice had to be published in a newspaper within the relevant county (or in the nearest county through which the proposed railway would run) for at least eight weeks prior to the day set for appraisal by the railroad corporation.  Iowa Stat. 1873, Ch. 4 § 1248.  Finally, under section 1253 of the statute, railroad companies acquiring easements through condemnation were not required to file deeds signed by the fee holders with the relevant county's recorder's office.  Instead, they were required only to file the commissioners' appraisal report and compensation to effectuate the taking:

> The report of the commissioners, where the same has not been appealed from, and the amount of damages assessed and costs have been deposited with the sheriff or, if an appeal is taken and the amount of damages assessed on the trial thereof has been paid to the sheriff, may be recorded in the record of deeds in the county where the land is situate, and such record shall be presumptive evidence of title in the corporation to the property so taken, and shall constitute notice of the right of such corporation therein.

Iowa Stat. 1873, Ch. 4 § 1253.[11]

---

or owning any of the following real estate, (here describe the land by its congressional numbers in tracts not exceeding one-sixteenth of a section, or, if the land consists of lots in a town or city, by the numbers of the lot and block.)  You are hereby notified that the [railroad company] had located its railway over the above described real estate, and desires the right of way over the same, to consist of a strip or belt of land [number] feet in width, through the center of which the centre line of said railway will run, together with such other land as may be necessary for bermes, waste banks, and borrowing pits, and for wood and water stations, (or desires the same for the purposes mentioned in sections twelve hundred and forty-three of this chapter, as the case may be) and unless you proceed to have the damages to the same appraised on or before [a particular date] (which time must be at least four weeks after the first publication of the notice,) said company will proceed to have the same appraised on [a particular date], at which time you can appear before the appraisers that may be selected.

Iowa Stat. 1873, Ch. 4 § 1247.

[11] The plaintiffs submitted the necessary reports relevant to those 86 parcels for which the government has already conceded liability because the subject parcels were acquired through

It is against this backdrop that the court now turns to the parties' disputes regarding how—and if—the condemnation statute impacts the interpretation of the deeds at issue.

### D.      Railroads Can Acquire Fee Title in Iowa Regardless of Potential Condemnation Action.

The plaintiffs argue that the Mason City RR acquired only railroad easements under the subject deeds based on the so-called "compulsory consent" theory recognized by the Federal Circuit in Preseault II, 100 F.3d at 1535-37.  Under the "compulsory consent" theory, deeds conveying interests in a railroad corridor to railroads in Vermont convey only easements limited to railroad purposes if the deeds were granted under the threat of condemnation.  The Federal Circuit held, applying Vermont law, that railroads obtain only easements notwithstanding language in deeds suggesting the grants of fee.  Specifically, the Federal Circuit found "on balance it would seem that . . . the proceeding retained its eminent domain flavor, and the railroad acquired only that which it needed, an easement for its roadway."  Id.

The plaintiffs argue that the "compulsory consent" theory should apply in Iowa as well on the grounds that railroads in Iowa are authorized to condemn only easements limited to railroad purposes under the Iowa condemnation statue.  See McKinley, 368 N.W.2d at 133.  Any deeds granted in the context of a potential condemnation, the plaintiffs argue, should therefore be construed in light of the limitations placed on railroads under Iowa's condemnation law.

---

condemnation without deeds from the landowners.  See Pls.' PFOF, Exs. I.1-I.34, ECF Nos. 59-11 to 59-14; Pls.' Resp. at 1 n.3.

The government argues that the plaintiffs' reliance on the "compulsory consent" theory in Iowa is misplaced.  The government asserts that the Iowa Supreme Court, in contrast to the Vermont Supreme Court, has expressly held that railroads can acquire fee interests despite the limited property rights obtained through operation of Iowa's condemnation statute.  In Watkins v. Iowa Cent. Ry. Co., the Iowa Supreme Court specifically held that a railroad company can take "greater title through its deed from [the grantor] than it would have acquired by condemnation proceedings under the statute."  98 N.W. 910, 913 (Iowa 1904).  In Watkins the Iowa Supreme Court went on to "find no provision of law which prevents [the railroad's] acquiring [fee] title by purchase."  Id. at 913.  The government notes that Iowa courts specifically differentiate railroad rights-of-way obtained through condemnation (where interests are created by statute) from those obtained through deed (where interests are created by agreement of the parties).  McKinley, 368 N.W.2d at 135 (holding that a right-of-way deed "is in essence a contract").  The government concludes, based on Watkins, that nothing in Iowa law suggests that fee deeds granted to railroads should be limited by the terms of Iowa's condemnation statute.

The court agrees with the government and finds that the "compulsory consent" theory applicable in Vermont has no equivalent in Iowa and thus the theory does not compel the court to construe the subject eight deeds as originally conveying only railroad purpose easements to the Mason City RR.  It is clear that the Iowa Supreme Court has recognized that railroads may acquire fee deeds to narrow strips of land notwithstanding their right to acquire strips of land through condemnation.  See, e.g., Lowers, 663 N.W.2d

16

at 410-11 (construing deed to a railroad as granting fee interest in railroad corridor); Watkins, 98 N.W. at 914 ("[A]lthough on condemnation nothing but an easement could be acquired, yet nevertheless a railway company may acquire a fee by deed."). The fact that the Mason City RR in this case acquired fee deeds following publication of notices of condemnation does not alter the Iowa Supreme Court's holding reached in Lowers and Watkins. The condemnation statute did not bar the railroad's right to acquire greater interests in land than otherwise authorized through condemnation. Nothing in Iowa law provides that a deed granting a fee interest to railroad for a negotiated sum should be construed in accordance with anything but the intent of the parties as expressed in its plain terms. McKinley, 368 N.W.2d at 135. Thus, these plaintiffs, as adjacent landowners, have no rights of reversion in the strips of land originally acquired by the Mason City RR.[12]

---

[12] In holding that railroad corporations can obtain fee title to narrow strips of land, the Watkins court expressly distinguished its conclusions from two prior Iowa Supreme Court cases plaintiffs rely upon, Smith v. Hall, 72 N.W. 427 (Iowa 1897) and Brown v. Young, 29 N.W. 941 (Iowa 1886), holding that railroad corporations only obtained easements in those cases because in those cases the railroads acquired rights of way:

> If the conveyance was simply of a right of way, a different rule might obtain, under the doctrine announced in Brown v. Young [and] Smith v. Hall . . . . But as we have seen, there is no such question here, and we leave that point simply with the suggestions already made. . . . It follows, then, that as defendant company received a deed in fee simple for the strip of land in controversy, there is nothing to revert or pass to [adjoining landowners].

Watkins, 98 N.W. at 914 (emphasis added).

### E.     The Subject Fee Deeds Were Not the Product of Completed Condemnation Actions.

The plaintiffs next argue that the subject deeds should be construed as conveying at most easements because if condemnation actions were initiated, the subject deeds would be superfluous.[13]  Specifically, they argue that if the condemnation was complete, nothing more than the property interest authorized by the condemnation statute (an easement) could be conveyed by deed.  The issue then is at what point under Iowa law is a condemnation completed to perfect property rights.

Plaintiffs rely on Ruppert v. Chicago, Ohio & St. Joseph Railroad Co., 43 Iowa 490 (1876), to support their contention that the "condemnation" defines the property interests conveyed by the deeds.  The Ruppert court held that once a condemnation is completed, any deed not consistent with the terms of the condemnation is void.  Id. at 493.  The plaintiffs argue, based on Ruppert, that any deed granted by landowners to a railroad following the initiation of a condemnation action should be construed as only memorializing the condemnation.  Pls.' Resp. at 20.  As such, the plaintiffs argue, the eight deeds at issue here conveyed nothing more than the easement the railroad had already obtained when it published the condemnation notice for the property if they conveyed anything at all.  In further support of their argument, the plaintiffs also cite to Smith, 72 N.W. at 428.  In Smith, the Iowa Supreme Court, in deciding whether an adjacent landowner possessed the reversionary interest in the right-of-way for purposes

---

[13] The plaintiffs note that "approximately 70%" of the parcels in this case "were condemned without the landowner responding by a deed conveyance to the Notices of Condemnation."  Pls.' Mot. Summ. J. at 30.

of the Iowa abandonment statute, noted that the adjacent landowner's "interest in the right of way is the same whether granted or condemned." Id. (citing Brown, 29 N.W. at 941). The Court explained that "[t]he exclusive use of the surface is acquired, and damages are assessed, on the theory that the easement will be perpetual; so that, ordinarily, the fee is of little or no value . . . ." Id. The plaintiffs contend that Smith confirms that railroads only needed easements and therefore the Mason City RR, in initiating a condemnation action, should be deemed to have acquired only the easements needed despite the deeds' express language.[14]

The government argues that there is no merit to the plaintiffs' claim that the subject deeds simply memorialized associated condemnation proceedings that began with notices of condemnation proceedings. They argue instead that the deeds are neither superfluous nor limited to the easements set forth in the notices. The government argues that "notice" is only one step in the condemnation process and that a condemnation is not completed until the railroad takes all requisite steps. Specifically, the government states, Iowa law provides that in cases where the landowner and a railroad cannot agree, an appraisal and delivery of the appraised amount to the sheriff is all that is necessary to effectuate the condemnation. Iowa Stat. 1873, Ch. 4 §§ 1244, 1253. According to the government, the railroad must first pay the sum awarded by the appraisal commissioners to the sheriff in order to perfect its property rights through condemnation. Until payment is made, the government contends, railroads do not receive any property rights through

---

[14] Since, as discussed in footnote 12, Smith involved a "right of way" deed and thus an easement, the dicta in that opinion is of little value in deciding this case because the issue here involves interpretation of fee deeds without limitation.

condemnation.  Def.'s Cross-Mot. Summ. J. at 19, ECF No. 65 (citing Henry v. Dubuque & Pac. R.R. Co., 10 Iowa 540, 544 (Iowa) ("As the legislature has in this case made such payment an essential condition to the right to appropriate, it follows that until made, the [railroad] company could acquire no right, and were in no manner protected by the mere assessment and judgment.")).  In Henry, a railroad located tracks for a planned condemnation of a strip of land, which was subsequently appraised.  10 Iowa at 541.  The railroad took possession of the land before paying the appraised amount to the landowner.  Id.  The landowner sued for trespass.  Id.  The Iowa Court held that the railroad acted as "mere trespassers" by entering the land.  Id. at 545 ("Before payment [railroad corporations] have no more right to enter upon and occupy the land for the purpose of running their road, or any other purpose than that of making surveys of the like, than if commissioners had not been selected . . . .").[15]  The government argues, therefore, that the subject deeds could not have conveyed mere easements because a condemnation had not been completed.  Rather, the government concludes, the subject deeds must be construed separately from the condemnation process and must be interpreted in accordance with the deeds' plain terms.[16]

---

[15] See also Gear v. Dubuque & Sioux R.R. Co., which held that "the proceedings for condemnation simply fix the price at which, upon actual payment, the company may take the right of way, and that it must accept the terms within a reasonable time."  20 Iowa 523, 532 (1866) (emphasis added).

[16] In further support of its argument, the government contends that notice of condemnation can, at most, be used as parol evidence to help interpret the deed.  The government argues, however, that under Iowa law, parol evidence is only admissible in cases where fraud, accident, or mistake is alleged.  Def.'s Cross-Mot. Summ. J. at 18 (citing Deupree v. Kibler, 192 N.W. 842, 843 (Iowa 1923); Beeson v. Green, 72 N.W. 555, 555 (Iowa 1897)).  The plaintiffs here do not allege fraud, accident, or mistake.

The court agrees with the government.  To begin, it is clear from an examination of Iowa case law and the Iowa condemnation statute that "notice" of a condemnation alone is not sufficient to effectuate a condemnation.  The Iowa Supreme Court has consistently held that railroads obtain interests in land through condemnation only upon actual payment for those interests.  See, e.g., Gear, 20 Iowa at 525 (holding that condemnation proceedings are not concluded and the railroad company is not compelled to place its railroad over subject land if it decides not to pay the appraised amount for the land); Henry, 10 Iowa at 544 ("[S]uch payment [of assessed value] is essential to the acquiring of any right by the company to the lands of the claimant.").  A railroad company, therefore, may not enter a property owner's land without first providing just compensation.  Hibbs v. Chicago & S.W.R. Co., 39 Iowa 340, 343 (1874).  Even in cases where the railroad begins condemnation proceedings, obtains an appraisal, and pays a portion of that appraisal, the condemnation is not complete.  Richards v. Des Moines Val. R. Co., 18 Iowa 259, 260-61 (1865).  Therefore, the court must reject plaintiffs' contention that "notice" of condemnation alone effectuated a transfer of property rights from the landowner to the railroad and thus the subsequent deed is limited to an easement.

In addition, the court finds the plaintiffs' reliance on Ruppert misplaced.  The Iowa Supreme Court in Ruppert, consistent with the other cited Iowa case law, held that once a condemnation was complete (after the railroad had received an appraisal and paid the assessed value to the sheriff), the subsequent deed from the landowner to the railroad conveyed "nothing" because the railroad had already acquired its property rights.  43

21

Iowa at 492-93.  Here, unlike in Ruppert, the plaintiffs have not presented any evidence that an appraisal or payment was made; therefore, the subject deeds could convey more than what the railroad could have obtained in a completed condemnation.  As a result, the fee deeds at issue here are neither irrelevant nor merely memorializing a condemnation easement.

Finally, the deeds themselves confirm that they are more than the "mere[ ] comple[tion of] the [condemnation] transaction" as the plaintiffs suggest.  Pls.' Resp. at 24.  The original landowners were under no obligation to grant the land by deed at all. Instead, they could have simply allowed the Mason City RR to condemn their land without use of any deeds.  In fact, as the plaintiffs point out, Mason City RR obtained most of its interest in the rail corridor at issue in this case through condemnation and did not obtain deeds for those acquisitions.  Pls.' Mot. Summ. J. at 30 ("As it turns out, 86 of the 124 parcels were condemned without the landowner responding by a deed conveyance to the Notices of Condemnation.  That is approximately 70%.").  This leads the court to conclude that deeds were only granted in those situations in which the railroad and the original landowners elected to negotiate for greater compensation, or interest in the subject land, or both.

None of the eight deeds use any limiting language, nor do any use the term "right-of-way" in the body of the text.  Moreover, contrary to the plaintiffs' suggestion, there is no evidence to suggest that the original grantors were unwilling actors forced to sign form deeds.  Pls.' Mot. Summ. J. at 21.  To the contrary, three of the fee deeds at issue

did not follow the form language used by several property owners.[17]  And in one deed, the Browne deed, the parties expressly altered the language of the Mason City RR form deed, increasing the fee grant from 100 feet to 250 feet.

For all of these reasons, the court concludes that the original landowners conveyed fee interests to the Mason City RR.  Because the landowners' deeds granted fee title to the Mason City RR, the plaintiffs lost no right of reversion through the STB's issuance of the NITU.[18]

### F.   The Burchinal Deed Grants an Easement Limited to Railroad Purposes.

The Burchinal deed, located at book 36, page 68, includes two separate conveyances.[19]  The first conveyance was for a fee for the depot grounds and for the reasons discussed above, the court finds there has not been a taking of any reversionary interest associated with that conveyance.  The second conveyance was for a right-of-way.[20]  With regard to the second conveyance, the parties dispute the scope of the

---

[17] The Burchinal deed used a form deed different from the one that Mason City RR typically utilized.  The second Burchinal deed and the Stone deed were handwritten.  The remaining five deeds used the typical form but one was altered to convey 250 feet rather than the standard 100 feet.

[18] These parcels include 3, 4, 5.A, 6.A, 6.D, 8.C, 8.D, 8.E, 9.A, 9.B, 9.C, 13.G, 13.H, 13.I, 23.A, 23.B, 27, 28, 29, 30, 38.B, 41.C, 41.E, 41.F, 42.A, 42.B, 42.C, 42.D, 42.E, 43.B, and 43.C.

[19] The fee conveyance affects that part of the railroad corridor adjacent to the parcels associated with claims 41.E, 41.F, 42.A, 42.B, 42.C, 42.D, 42.E, 43.B, and 43.C.  The easement conveyed rights in that part of the railroad corridor adjacent to the parcels associated with claims 40.E and 41.B.

[20] The plaintiffs dispute whether this deed makes two conveyances.  Pls.' Suppl. Mot. Summ. J. at 3-4, ECF No. 94.  The plaintiffs argue that the part of the deed that conveys an easement is actually the granting language for the entire deed including the 250-foot wide property conveyed

easement granted to the railroad.  The government argues that the deed grants a "general"

easement which encompasses the trail use authorized by the NITU.[21]  The plaintiffs argue

that the easement is limited to railroad purposes and does not contemplate trail use.  The

deed provides, in relevant part:

> This Indenture, made this 12th day of February, in the year of our Lord, One Thousand Eight Hundred and Eighty Seven between T.P. Burchinal and M.J. Burchinal, his wife, of Jasper County, Iowa, parties of the first part, and the Mason City and Fort Dodge Railroad Company, a corporation of the State of Iowa, party of the second part; Witnesseth, that the said parties of the first part, in consideration of the sum of One Dollar,. . . Grant, bargain, Sell, Release and Quitclaim to the said party of the second part, its heirs and assigns, forever, all the following piece or parcel of land, lying and being in the County of Cerro Gordo and State of Iowa, described as follows to wit:

> A parcel of land two hundred and fifty feet wide and thirteen hundred feet long on the west half of the northwest quarter of Section Twelve. . . where said main line crosses the east line of the west half of the northwest quarter of said Section Twelve. . . . <u>Also the Right of Way one hundred feet in width being fifty feet in width on each side of the center line of the main track of said Railroad over</u>, and across South West quarter of North West quarter of said Section Twelve (12) as is not included in the above described property conveyed for station grounds.

Pls.' Ex. II.5, ECF No. 62-8 (emphasis added).

The court agrees with the plaintiffs that the subject Burchinal deed's second

conveyance granted an easement limited to "railroad purposes."  The Iowa Supreme

---

for the station.  The court finds, however, that such an interpretation would ignore the express language setting the second conveyance apart from the first, specifically stating that the 100-foot right-of-way is "not included in the above described property."

[21] Many of the government's arguments regarding deed interpretation within the context of determining the scope of easements were rejected in this court's decision, <u>Jenkins v. United States</u>, 102 Fed. Cl. 598, 607-12 (Fed. Cl. 2011).  The court will not repeat or address those arguments.  Rather, based on the court's decision in <u>Jenkins</u>, the government's additional arguments regarding the scope of the easement are rejected here.

Court in <u>Macerich Real Estate Co. v. City of Ames</u>, 433 N.W.2d 726, 729 (Iowa 1988),

considered language similar to the above-quoted deed and concluded that language

identifying railroad use by its terms conveys only an easement for railroad purposes.  In

<u>Jenkins</u>, 102 Fed. Cl. at 607, this court, in applying <u>Macerich</u>, held that the language in

the following deed conveyed only an easement limited to railroad purposes:

> [Grantors] hereby sell and convey to the Des Moines Valley Rail Road
> Company, a corporation duly organized under the laws of the State of Iowa,
> the right of way for railroad as the same is located said right of way to be
> one hundred feet in width <u>to be used for a single or double track for said
> railroad and for any other Rail Road purposes or uses</u> over and across the
> following described tract in the County of Dallas and State of Iowa, [legal
> description of the property].

<u>Id.</u>  The government argues that the present case should be distinguished from the deed in

<u>Macerich</u> because the deed does not, like the other deeds explicitly state that the right-of-

way is "for" railroad tracks.  In such a circumstance, the government argues, the general

use contemplates any use of the land, including trail use.  The court does not agree.

A review of the language of the right-of-way conveyance clearly contemplates

railroad use.  The deed specifically references the "main track of said Railroad" for which

the easement will be used.  Clearly the purpose of the easement is for rail purposes.  As

such, issuance of the NITU, blocked plaintiffs' reversionary rights in that portion of the

corridor.  The government is liable for taking that interest for the parcels associated with

claims 40.E and 41.B.

## III.  CONCLUSION

For the foregoing reasons, the court grants summary judgment to the government

on 31 above-identified claims and finds the government is liable for takings with regard

to the remaining two claims as set forth above.  The government's cross-motion is **GRANTED-in-PART and DENIED-in-PART**.  The plaintiffs' motion is also **GRANTED-in-PART and DENIED-in-PART**.  The parties shall file a joint status report February 22, 2013 detailing the next steps in the litigation to resolve the just compensation issue.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge