# In the United States Court of Federal Claims

NOT FOR PUBLICATION

Nos. 09-503L, 09-241L, & 09-158L

(Filed: September 4, 2013)

|  |  |
|---|---|
| WILMA N. ADKINS, et al., | ) |
| | ) |
| and, | ) |
| | ) |
| STEVEN JENKINS, et al., | ) |
| | ) |
| and, | ) |
| | ) |
| MARK S. RASMUSON and | ) |
| BRENDA S. RASMUSON, husband | ) |
| and wife, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

*Thomas S. Stewart*, Kansas City, MO, for plaintiffs.  *Elizabeth G. McCulley*, Kansas City, MO, and *Steven M. Wald*, and *J. Robert Sears*, St. Louis, MO, of counsel.

*Frank J. Singer*, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC, with whom was *Robert G. Dreher*, Acting Assistant Attorney General, for defendant.  *Jacqueline C. Brown*, U.S. Department of Justice, Washington, DC, of counsel.

## TRIAL OPINION

**FIRESTONE**, *Judge*.

The court held trial the week of August 5, 2013 in Des Moines, Iowa for these three related class actions, Rasmuson v. United States (09-158), Jenkins v. United States (09-241), and Adkins v. United States (09-503). The plaintiffs, Iowa landowners, seek just compensation for the imposition of easements for rail banking and recreational trail use placed on their parcels of land through the Surface Transportation Board's ("STB") issuance of Notices of Interim Trail Use ("NITU") pursuant to the National Trails System Improvements Act of 1983, 16 U.S.C. 1247(d).[1] The court previously determined that the government is liable to the owners of parcels adjacent to the railroad corridor for takings as of the dates of the NITUs.[2] The parties subsequently stipulated to just compensation amounts for a subset of the plaintiffs in each case.[3] The court held trial to determine just compensation for the remaining plaintiffs.

---

[1] While the three cases have not been consolidated, the cases were combined for purposes of trial because of the overlap among issues and experts on the remaining just compensation issues in the three cases.

[2] The court has previously determined that the government is liable for taking easements for public use without just compensation in each of the cases. See Rasmuson v. United States, 109 Fed. Cl. 267 (2013); Adkins v. United States, 09-503L, 2013 WL 9551158 (Fed. Cl. March 12, 2013); Adkins, No. 09-503L, slip op. (Fed. Cl. July 10, 2012); Jenkins v. United States, 102 Fed. Cl. 598 (2011).

[3] For Rasmuson, the court determined liability for 41 landowners who collectively owned 90 parcels adjacent to the railroad corridor as of the date of the NITU. The parties have stipulated to just compensation for 5 landowners who collectively owned 14 parcels in the total amount of $70,986.79. The parties have not been able to resolve the amount of just compensation for the owners of the 76 remaining parcels.

For Jenkins, the court determined liability for 69 landowners who collectively owned 133 parcels adjacent to the railroad corridor as of the date of the NITU. The parties have stipulated to just compensation for 35 landowners who collectively owned 54 parcels in the total amount of $482,843.50. The parties have not been able to resolve the amount of just compensation for the owners of the remaining 79 parcels.

## I.    DISCUSSION

At trial, the parties presented evidence, primarily through testimony provided by their expert witnesses, on their competing valuations of the parcels affected by the easements and their calculations for just compensation.  The plaintiffs presented testimony from three expert appraisal witnesses: Gene Nelsen, David Matthews and Douglas Hodge.  All were accepted as experts.  The plaintiffs relied primarily on the testimony and reports of Gene Nelsen.  Mr. Nelsen, the president of Nelsen Appraisal Associates, Inc., which he founded in 2007, is a certified general real property appraiser in both Iowa and Nebraska, and has over 25 years of appraisal experience including real estate valuation, land development, and land use evaluation.  He graduated from the University of Northern Iowa with a bachelor's degree in environmental planning and has both an MAI designation from the Appraisal Institute and a CCIM designation from the CCIM Institute.  Mr. Nelsen has wide experience with agricultural condemnations and has previously appraised property values associated with rail lines and rural land.  For this case, Mr. Nelsen performed 39 full appraisals for 112 parcels, and prepared summary appraisals for 18 other plaintiffs owning 41 parcels the plaintiffs classify as "severed agricultural parcels."  Mr. Nelsen then used his appraisals and summary appraisals to

---

For Adkins, the court determined liability for 21 landowners who collectively owned 49 parcels adjacent to the railroad corridor as of the date of the NITU.  The parties have stipulated to just compensation for 7 landowners who collectively owned 28 parcels in the total amount of $162,811.  The parties have not been able to resolve the amount of just compensation for the owners of the remaining 21 parcels.

The court attaches as Appendices A-C tables setting forth just compensation for the plaintiffs associated with each of the claims for which the parties stipulated amount just compensation in each of the cases.

3

extrapolate the value of the remaining parcels based upon the acreage of parcels he determined to be similar.

David Matthews and Douglas Hodge testified in support of the appraisal methodology utilized by Mr. Nelsen and to rebut the testimony of the government's expert witnesses.[4] Mr. Matthews is an appraiser and the owner of the real estate appraisal firm David Matthews Associates, which he founded in 1980. He holds a bachelor's degree in real estate from the University of Tennessee and is a certified general appraiser in Indiana, Kentucky, and Illinois. He has an MAI designation from the Appraisal Institute. Mr. Matthews has been involved in 100 farm appraisals a year representing over a million acres of agricultural land. Mr. Matthews has previously served as an expert appraiser for the United States Department of Justice in other "rails-to-trails" cases and has previously testified on the appropriate methodology for appraising associated lands. Mr. Hodge currently serves as the eastern district appraisal manager for Farmers National Company and has 30 years of appraisal experience. He graduated from Ferris State University with a bachelor's degree in finance and holds the MAI designation, among others. He has also served as an appraiser in a number of rails-to-trails cases for

---

[4] The plaintiffs also offered Darrell Bullock to testify as an expert regarding the proper methodology for appraisal of rails-to-trail cases. Mr. Bullock graduated from the University of Mississippi with a bachelor's degree in biological sciences. He entered the appraisal business in 1998 and started his firm, Bullock Appraisal Services, LLC the following year. He has the MAI designation. Throughout his career, Mr. Bullock has done appraisal work for only one rails-to-trails case, localized in Mississippi, and he has no experience in appraising property in Iowa. Given Mr. Bullock's limited background both in rail-to-trails cases and with appraisals in Iowa, the government moved to strike Mr. Bullock's testimony as irrelevant. The court determined that Mr. Bullock's testimony would not be of any help to the court because his experience was largely irrelevant to resolving the issues in the subject cases. Thus, granted the government's motion and Mr. Bullock did not testify.

which he determined the appropriate just compensation for both plaintiffs and government.

The government presented testimony from its primary expert appraisal witness, Patrick Schulte, who performed a separate appraisal for each property at issue.  Mr. Schulte, a general real property appraiser certified in Iowa, holds a bachelor's degree in business administration with a concentration in real estate and urban land economics from the University of Wisconsin, Madison.  He obtained the MAI and SRPA designations from the Appraisal Institute and has over 35 years of experience appraising commercial, industrial, and investment property.  He has previously appraised golf courses and has used his appraisal experience in cases involving eminent domain.  In addition to Mr. Schulte, the government presented expert testimony from Shannon Gomes, a certified agronomist and soil scientist, who testified as to soil quality of the land in the former railroad corridor, and Richard Voelker, a professional civil engineer who testified as to the physical boundaries of certain parcels at issue as well as the cost of reclaiming the land in the former right railroad corridor for agricultural purposes.[5]  The

_____

[5] Mr. Gomes holds a master's degree in soil fertility from Iowa State University and a bachelor's degree in soil science from California State Polytechnic University.  He has worked as a soil scientist for the U.S. Department of Agriculture and has over 25 years of experience as a crop consultant.  He is certified as an agronomist and soil scientist by the American Society of Agronomy and currently works for Cedar basin Crop Consulting.

Mr. Voelker is a professional civil engineer licensed in Iowa, Nebraska, and Wisconsin and earned a bachelor's degree in civil engineering from Iowa State University.  He currently works as a senior transportation engineer at Snyder & Associates, Inc., an Iowa-based engineering firm.  He has over 20 years of experience in civil engineering construction projects, about which he has written several publications.  His experience includes earthwork calculation and cost estimation, boundary surveys, and right-of-way acquisition issues.  Mr. Voelker has wide experience with engineering trail, bike lane, and side path construction in Iowa.  He worked on the design of the

court certified all of the government's expert witnesses as experts in their respective fields.

At trial, the parties' experts explained their methodologies for determining just compensation due to the plaintiffs. Both parties' principal experts utilized a "before and after" comparable sales approach to determine market value, incorporating severance damages to arrive at a just compensation value.[6] This approach requires the appraiser to first determine the highest and best use[7] of a particular tract or parcel of land as if available for such use. The appraiser's opinion of the market value[8] for a subject parcel should be supported by selecting a number of sales of lands comparable to the subject

---

recreational trails built in connection to the recreational trail easements associated with <u>Jenkins</u> and <u>Adkins</u>.

[6] The Uniform Appraisal Standards for Federal Land Acquisitions, developed and adopted by the Interagency Land Acquisition Conference and published by the Appraisal Institute, is intended to guide appraisals associated with federal land acquisitions and adopts the "before and after" methodology used by both parties. <u>See</u> <u>Uniform Appraisal Standards for Federal Land Acquisitions</u> 50-51 (Appraisal Inst. ed, 2000) ("<u>Yellow Book</u>") (describing appropriate use of the "before and after" methodology in cases involving partial takings).

[7] The Yellow Book states that highest and best use must be analyzed in terms of its (1) physical possibility, (2) legal permissibility, (3) financial feasibility, and (4) its degree of profitability. <u>Yellow Book</u> 36. The use that meets the first three factors and results in the most profitable use is the property's highest and best use. <u>Id.</u>

[8] The Yellow Book defines "market value" as:

> Market value is the amount in cash, or on terms reasonably equivalent to cash, for which in all probability would have sold on the effective date of appraisal, after a reasonable exposure time on the open competitive market, from a willing and reasonably knowledgeable seller to a willing and reasonably knowledgeable buyer, with neither acting under any compulsion to buy or sell, giving due consideration to all available economic uses of the property at the time of the Appraisal.

<u>Yellow Book</u> at 13.

parcel across a variety of criteria such as highest and best use, location, physical characteristics, and market conditions, among others.  The appraiser seeks to compare sales that are as similar to the subject parcel as possible in order to control for differences among that subject parcel and the selected comparable sales.  Within the context here, the comparable sales analysis is used twice in deciding just compensation—first to determine the "before" value prior to encumbrance resulting from the NITU and then to determine the after value of the subject parcel after the imposition of the recreational easement.  The "before" valuation requires a determination of the fair market value of the entire affected parcel as if the new trail easement did not exist.  The "after" value is a separate determination taking into account the placement of the subject easement.  The difference between these two values sets the market value basis for just compensation.

While the parties agreed that the before and after comparable sales methodology is the appropriate baseline approach for determining just compensation in this case, their experts' just compensation calculations differed in many instances.  The differences resulted primarily from two general disagreements with regard to application of the methodology.  First, the experts selected different comparable sales for the before and after valuations, which resulted in different per acre valuations for each of the parcels.[9] As will be discussed in more detail below, this partially stemmed from different interpretations of what constituted an appropriate value in the before condition.  Second, the parties disagreed as to the proper measure of severance damages for certain parcels.

---

[9] The parties have stipulated to the number of acres taken for each parcel.

Severance damages are appropriate in cases where, as here, the government takes only a portion of a property holding.  Where applicable, severance damages are awarded to compensate the landowner for the diminution of value to the remainder resulting from the partial taking.[10]  The parties agreed that severance damages would be a factor to consider in these cases.

The parties also agree that these cases include properties with three categories of highest and best use: residential, commercial,[11] and agricultural.  With regard to the appraisals of agricultural lands, the parties distinguished between those where the property was bisected by the easement and those where the easement was only adjacent to the agricultural parcel.  The bisected agricultural parcels were generally associated with additional severance damage issues.  Accordingly, bisected agricultural parcels are treated separately from regular agricultural properties in the opinion, even though they have the same highest and best use.

In determining the proper measure of just compensation for the parcels at issue, the court notes that it has discretion in adopting a methodology for determining and awarding just compensation.  Otay Mesa Prop., L.P. v. United States, 670 F.3d 1358, 1369 (Fed. Cir. 2012).  Specifically, the court may decide to accept only a portion of findings from one party's experts and to pair such findings with determinations from the

---

[10] Plaintiffs bear the burden of proving severance damages.  Hendler v. United State, 175 F.3d 1375, 1383 (Fed. Cir. 1999) (citing Miller v. United States, 620 F.2d 812, 828 (Ct. Cl. 1980)).

[11] Rasmuson parcel 15 is used as a golf course and involves appraisal issues particular to that use.  For ease, the golf course will be discussed in the same section as the parcels designated by the parties as commercial.

other party's experts.  See Precision Pine & Timber, Inc. v. United States, 596 F.3d 817,

833-34 (Fed. Cir. 2010) (approving trial court's decision to modify an expert's damages

calculation).  Accordingly, the court is not bound to accept and utilize the findings of

only one party's experts and is instead free to determine the relative weight of both sides'

expert witnesses and the calculation methodologies upon which they rely.  See, e.g.,

Washington Metro. Area Transit Auth. v. United States, 54 Fed. Cl. 20, 36 (2002) ("[I]n

dealing with a thorny issue of valuation, it is for this court to 'synthesize in its mind . . .

the record before it, determine to what extent opinion evidence rested on facts, consider

and weigh it all, and come up with figures supported by all the evidence . . . .'" (alteration

in original) (quoting United States v. N. Paiute Nation, 183 Ct. Cl. 321, 346 (1968))).  As

a result, the court's just compensation determinations set forth below take into account

the expert testimony presented by both parties.

　　　　For each parcel in each highest and best use category, the court has identified each

party's proposed just compensation award and the court's final determination.

##　　A.　　Residential Parcels

　　　　There are eight residential parcels for which the parties dispute the proper measure

of just compensation.[12]  In total, Mr. Nelsen calculated just compensation for these eight

parcels to be $149,337.38 and Mr. Schulte calculated just compensation to be $59,900.00

for a total difference of $89,437.58.  Mr. Nelsen testified that he based his opinion for all

of the eight properties on a before and after comparable sales appraisal for only one of the

---

[12] The eight residential parcels are Jenkins parcels 21, 42, 45, 46, 56.A, 56.B, 56.C, and 80.  All of the parcels are located in Dallas County.

eight parcels, parcel 46, which he determined was representative of the group.  He then

extrapolated his computed per-acre value for that parcel onto six of the seven remaining

residential parcels.  Using four comparable sales of residential parcels ranging between

1.85 and 2.45 acres, Mr. Nelsen valued parcel 46 at $29,000 per acre, Nelsen Haldeman

Parcel Appraisal Report 35, PX 1.A, and applied the $29,000 per-acre value to the six

parcels he deemed similar to determine just compensation for those parcels.  For parcel

80, Mr. Nelsen testified that he reduced his per-acre value from $29,000 per acre to

$9,200 per acre based on location differences.  Mr. Nelsen testified that appraisers

commonly use a "representative" appraisal technique for properties, like the ones at issue

here, that are sufficiently similar that it is not cost-effective to undertake separate

appraisals for each.

Mr. Schulte, in contrast to Mr. Nelsen, conducted a separate appraisal for each of

the eight residential properties.  He testified that Mr. Nelsen's reliance on extrapolation

of per-acre values was inappropriate for the properties at issue in these cases.  He testified

that the per-acre values of individual residential lots are highly affected by even small

differences in location.  Mr. Schulte explained that the attractiveness of a lot and its

particular environs can have an impact on the per-acre value of residential lots, causing

wide disparities in value even for parcels located in the same neighborhood.  Mr. Schulte

also explained that there were zoning differences among the parcels that were not

accounted for by Mr. Nelsen.  Mr. Schulte testified that many of the parcels, including

parcel 46, are zoned A-1, Agricultural District, by Dallas County.[13]  Mr. Schulte testified

that properties designated zone A-1 require ten acres for building—if the lot was created

after July 22, 2004.  Residential lots created prior to this update to the A-1 designation,

like those at issue here, allowed for building on less than ten acres.  Mr. Schulte

explained that for these single family home residential lots, any marginal acreage taken

beyond what is required to build a house is worth less than the acreage actually needed to

construct a dwelling.  By way of example, Mr. Schulte testified that the average per-acre

value of a ten acre lot created after July 22, 2004 within an area zoned A-1 would be

higher than the per-acre value of a similarly situated lot of eleven acres.  Mr. Schulte

reasoned that the value of the marginal eleventh acre would be less than the value of the

marginal tenth acre because the tenth acre would permit building, while the eleventh acre

added no similar additional value.  Since the eleventh acre would be worth less than the

tenth, an eleven acre lot would have an average per-acre value less than a ten acre lot.  In

a similar manner, Mr. Schulte testified, the land taken as a result of the easement for

those properties under ten acres was similarly non-essential to constructing single family

dwellings.  According to Mr. Schulte, since the property taken for the easement was not

needed to allow for building, while the remaining acreage would be needed for that

purpose, the per-acre value of certain lots was actually higher in the after condition when

compared to the before condition.  Mr. Schulte opined that because of the impact of

zoning restrictions and the variable price per acre based on the attributes of a given lot,

---

[13] The purpose of the A-1 zoning designation is to "preserve agricultural resources and protect
agricultural land from encroachment of urban land uses."  Schulte Haldeman Appraisal Report
279, DX 229.

basing just compensation on a single property and then extrapolating to others was not appropriate.

Although the court agrees with Mr. Nelsen that appraisals using the extrapolation method is well-supported and is used in many circumstances, the court finds that it cannot ignore the detailed individual appraisals testified to by Mr. Schulte. These appraisals were necessarily more complete and provided the court with a more comprehensive understanding of just compensation for the subject properties and demonstrated that Mr. Nelsen's approach may have overvalued just compensation in the case of residential parcels. The court notes, in this connection, that Mr. Schulte found the per-acre value of parcel 46, the basis for Mr. Nelsen's appraisal, was by far the highest— $21,000 per acre in the before condition and $24,000 in the after condition. Accordingly, the court has determined that Mr. Schulte's appraisals were more persuasive and will be adopted by the court as the appropriate measure of just compensation for the subject residential parcels. Consistent with these conclusions, the court finds as follows:

Plaintiffs Jeff and Theresa Kuehl (Jenkins parcel 21) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiffs' parcel number is 1102427015. Mr. Nelsen's before value for the parcel is $29,000 per acre and his after value is $29,000 per acre. Based on the acreage taken, Mr. Nelsen opined that just compensation is owed in the amount of $32,329.51. For parcel 21, Mr. Schulte testified to a before value of the parcel at $12,000 an acre and an after value of $12,000 per acre. Based on the acreage taken Mr. Schulte opined that just compensation should

be in the amount of $13,400.  The court agrees with Mr. Schulte and awards plaintiffs Jeff and Theresa Kuehl $13,400 in just compensation.

Plaintiff Kenneth Renfrow (Jenkins parcel 42) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 0735351013.  Mr. Nelsen's before value for the parcel is $29,000 per acre and his after value is $29,000 per acre.  Based on the acreage taken Mr. Nelsen opined that just compensation is owed in the amount of $25,474.07.  For parcel 42, Mr. Schulte determined that the property had a before per-acre value of $14,000 and an after value of $14,000 per acre.  Based on the acreage taken, Mr. Schulte opined that just compensation is owed in the amount of $12,200.  The court agrees with Mr. Schulte and awards Kenneth Renfrow $12,200.

Plaintiffs Allen and Anne Winter (Jenkins parcel 45) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel number is 0734400005.  Mr. Nelsen's before value is $29,000 per acre and his after value is $29,000 per acre.  Based on the acreage taken, Mr. Nelsen opined that just compensation is owed in the amount of $25,808.40.  For parcel 45, Mr. Schulte opined that the subject property had a before per-acre value of $12,000 and an after per-acre value of $12,500 per acre.  Based upon the acreage taken, he opined that just compensation should be $8,200.  The court agrees with Mr. Schulte and awards Allen and Anne Winter $8,200.

Plaintiffs Gale and Gloria Haldeman (Jenkins parcel 46) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs'

parcel number is 0734400004.  Mr. Nelsen's before value is $29,000 per acre and his after value is $29,000 per acre.  He opined, based on the acreage taken, that just compensation based on the acreage taken should be $19,140.00.  For parcel 46, Mr. Schulte determined a before value of $21,000 per acre and an after value of $24,000 per acre.  Based on the acreage taken, he opined that just compensation should be $8,600.  The court agrees with Mr. Schulte and awards $8,600 to Gale and Gloria Haldemen.

Plaintiff Bern Boyett (Jenkins parcels 56.A, 56.B, 56.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 0708300005, 0708163001, 0708159002.  Mr. Nelsen's before value is $29,000 per acre and his after value is $29,000 per acre.  Mr. Nelsen opined, based on the acreage taken, that just compensation should be $36,937.77.  For parcels 56.A, 56.B, and 56.C, Mr. Schulte determined a before value of $10,000 per acre and an after per-acre value of $10,000.  He opined that just compensation should be $11,200.  The court agrees with Mr. Schulte and awards Bern Boyett $11,200.

Plaintiffs Roger and Jane Dorman (Jenkins parcel 80) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel number is 0223300006.  Mr. Nelsen's before value is $9,200 per acre and his after value is $9,200 per acre.  He opined that for the acreage taken just compensation should be $9,647.83.  For parcel 80, Mr. Schulte testified to a before value of $8,000 per acre and an after value of $8,500 per acre.  Based on the acreage taken Mr. Schulte opined that just compensation should be $6,300.  The court agrees and awards Roger and Jane Dorman $6,300.

## B.        Agricultural Parcels

With regard to all agricultural parcels, the parties disagreed on two overarching, yet related, methodological issues concerning the appraisal of agricultural parcels.  First, they disputed whether it is proper appraisal methodology to disregard the physical remnants of the railroad corridor when the appraiser must appraise the parcel as if it was unencumbered in the before condition.[14]  The government argues that it is inappropriate for an appraiser to ignore the physical remnants of railroad use because a reasonably informed buyer would consider the cost to reclaim the land in determining an offer price for the parcel as a whole.  According to the government, where the landowner would seek land reclamation, the cost to convert the former rail line into tillable land should be deducted from the per-acre value of the entire parcel in the before condition.  The plaintiffs argue that an appraiser is allowed to disregard any remaining rails, ties, ballast, and topography, when appraising former rail corridors converted to trail use.  According to the plaintiffs, where an appraiser is given the instruction to appraise the land as if unencumbered in the before condition, it is appropriate for appraisers to adopt a "hypothetical condition"[15] in the appraisal and to value the land in the before condition as if the railroad never existed.  The plaintiffs presented testimony from experts to establish

---

[14] See Jenkins v. United States, 102 Fed. Cl. 598, 613 (2011) ("The government's taking liability for blocking plaintiffs' right to unencumbered property extends to all of the actions authorized by the government in the NITU.").

[15] "Hypothetical condition" is a term of art used in the appraisal industry.  Where instructed and appropriate, appraisers may disregard known facts or characteristics about a subject property, and adopt a hypothetical condition, to provide an appraisal as if those facts or characteristics were changed or non-existent.  Yellow Book at 12 n.18 (citing Uniform Standards of Professional Appraisal Practice (Appraisal Found. ed., 2000)).

that this is the approach taken previously in many rails-to-trails cases.  In the alternative, they presented testimony to show that if the "as is" condition of the former rail corridor is relevant at all, it is only relevant for purposes of determining the highest and best use of the land.  In these cases, however, there is no dispute that the highest and best use for all the agricultural properties is, in fact, for agricultural use.

Second, and relatedly, the parties disagreed as to whether it was appropriate to adjust the land valuations, and resulting just compensation, based upon extrapolated differences in soil quality in the before and after valuation of the subject property.  The government argues that an appraiser cannot ignore the allegedly inferior soil found within the former rail corridor in valuing the property in the before condition.  Because the soil within the former corridor may be inferior, the government contends, the loss of that property by virtue of the new easement would actually increase the value per acre of the remaining parcel in the after condition.  Mr. Schulte adjusted his appraised value for these differences in soil quality.

The plaintiffs argue that variances in soil quality between the former corridor and surrounding tillage are not relevant and would be relevant, if at all, only in determining the highest and best use of the land.  They contend it would not operate to reduce the compensation owed to the plaintiffs.  In addition, the plaintiffs presented testimony challenging Mr. Schulte's adjustments to establish that Mr. Schulte's approach is not based on reliable data.

The court will first address these two general issues, which affect the calculation of just compensation for all disputed agricultural parcels whether or not they were bisected by the rail corridor.

Mr. Schulte testified that, in appraising the subject parcels as unencumbered by a railroad easement in the before condition, it is inappropriate to disregard the physical remnants of the rail line.  He stated that he understood the word "unencumbered" to refer only to the "legal easement" and not to physical evidence of rail use.  Mr. Schulte relied on the Yellow Book's definition of "fair market value," which, as discussed above, states that a property's value should be determined with regard to what a "willing and reasonably knowledgeable buyer" would pay for that property as requiring consideration of any railroad remnants on the value of agricultural land.  As a result, he considered in his appraisals the cost to reclaim the former rail corridor for agricultural use and subtracted that cost from the value of the land in the before condition.  This, in effect, reduced the price per acre of the subject parcels in the before condition, thereby minimizing the calculated just compensation.

At trial and in his appraisal reports, Mr. Schulte provided a detailed explanation as to how he calculated the cost of reclamation of the former rail corridor for agricultural use.  Mr. Schulte based his calculations on the work of two other government experts, Mr. Gomes and Mr. Voelker.  Mr. Schulte relied on Mr. Gomes' report to help calculate the topography of the area to be reclaimed and Mr. Voelker's report to estimate the cost of earthwork necessary to reclaim the former rail corridor.  Mr. Schulte utilized light

detection and ranging ("LiDAR")[16] data, when available from Mr. Gomes' report, to determine the relative elevation of the former rail corridor and surrounding agricultural acreage. With these data, Mr. Schulte calculated the volume of earthwork necessary to level the corridor to make it suitable for row cropping.[17] Mr. Schulte then took the cost estimates for reclaiming property, relying in part on Mr. Voelker's report, to develop a value of either $1.50 or $2.25 per cubic yard for reclamation depending on the condition and location of the corridor. He calculated the cost of reclamation by multiplying the cost per acre of earthwork by the volume of earthwork needed. In cases where LiDAR data were unavailable, Mr. Schulte testified that he determined whether the difference in elevation between the corridor and the surrounding tillage was "slight," "moderate," or "severe" and applied an earthwork cost per acre ranging from $500 to $1,500 based upon the severity of the elevation differences. Using these approaches, Mr. Schulte determined for each parcel whether it was "economical" to reclaim the land. If he determined that reclamation was not economical, he would not count the cost of reclamation against the value of the parcel in the before condition. Where he determined that it would be economical to reclaim the corridor, he opined as what percentage of the corridor would

---

[16] LiDAR is an "optical remote sensing technology that can measure distance elevation by illuminating a target with laser light and analyzing the background of scattered light." Gomes Report at 12, DX 140. LiDAR data is generally accomplished by utilizing an airplane equipped with a global positioning system receiver and laser scanning systems. Id.

[17] Mr. Schulte testified that he reduced the amount of fill required by 50% because he estimated that a perfectly level grade was not necessary for what agricultural work that may occur after reclamation.

actually be reclaimed and counted only that percentage of the costs against the value of the parcel in the before condition.[18]

In addition to factoring in the cost to reclaim in the before valuation, Mr. Schulte also testified that he made additional adjustments based on his consideration of soil productivity for the portion of the property within the former corridor.  Mr. Schulte testified that, in his opinion, the soils within the former rail corridor would have lower productivity when compared to the surrounding tilled acreage.  To account for the less valuable soils within the former corridor, Mr. Schulte relied on Iowa's soil corn suitability rating ("CSR") for properties.  In Iowa, agricultural land is assigned a CSR rating, which is used for tax and other purposes to quantify the productivity and potentially to distinguish the value of certain areas in Iowa over others.  Mr. Schulte explained that CSR was developed in the 1970s.  According to Mr. Schulte, CSR values range between 0 and 100, with higher ratings representing better soil productivity than lower ratings.

Mr. Schulte's use of CSR affected both his before and after valuations.  In his before valuations, Mr. Schulte opined that the lower CSR rated soils lowered the overall per-acre value of the parcel because some of the acreage would not be as productive.  In

---

[18] Mr. Schulte testified that while he calculated the cost to reclaim the corridor for non-bisected agricultural parcels, he concluded that no owner of a non-bisected parcel would reclaim the rail corridor because the marginal gain of what would amount to fifty feet of point rows would not be economical.  Point rows, which will be discussed in more detail in the next section, are the result of angled edges to a parcel and reduce the value of the land because they are more difficult to farm.  Since the rail corridor runs adjacent to non-bisected parcels, reclaiming the rail corridor would not eliminate point rows and would provide, according to Mr. Schulte, 50 feet of difficult-to-farm land.

his after valuations, Mr. Schulte opined that exclusion of the corridor's soil, with its less productive and lower value soil, would increase the per-acre value of a farm in the after condition related to the before because the poorer soil would not depress the average soil value of the parcel as a whole.

Mr. Schulte testified that he first determined the CSR for each subject parcel by consulting the tax assessor's report for each property. The recorded CSR tended to range in the 70s and 80s, with an average of 84. The CSR for the parcel in the before condition was the weighted average of the recorded CSR value for the parcel and Mr. Schulte's estimated CSR value for that portion of the parcel that fell within the corridor. To determine the CSR for the corridor, he assigned a rating of 20 or 30[19] to the portion of the corridor he believed would not likely be reclaimed and a rating of 50 for the portion of the corridor he believed would be reclaimed. For parcels where he believed that the corridor would not be reclaimed, he assumed that 100% of the corridor would have a rating of 20 or 30. Mr. Schulte testified that he compared the CSR of the parcel in the before and after conditions and then applied an upward adjustment of one percentage point to the value of the parcel in the after condition for each percentage point the CSR increased in the after condition as compared to the before condition. Ultimately, this approach operated to reduce the difference of the value of land in the before condition and the after condition, thus reducing the calculated amount of just compensation.

---

[19] Mr. Schulte testified that he estimated a CSR of 20 for the un-reclaimed portions of the corridor associated with the <u>Adkins</u> and <u>Jenkins</u> parcels and a CSR of 30 for the <u>Rasmuson</u> parcels.

Mr. Gomes, on behalf of the government, offered testimony in support of Mr. Schulte's conclusions regarding soils within the former rail corridor.  Mr. Gomes testified that he had been tasked with evaluating soils in the corridor.  He explained that he selected four parcels to exemplify the relative condition of the soil in the railroad corridor compared to the surrounding tilled acreage.  He took soil samples, or cores, at each of the four sites to a depth of 36 to 48 inches.  He testified that, for the most part, the right-of-way lacked the most important soil horizon for crop production, top soil, thereby negatively impacting the soil's productivity.  He stated that the lower quality soil was likely present in roughly 75% to 90% of the width of the typically 100-foot corridor.  For one of the four samples, however, Mr. Gomes testified, and his report reflects, that there was no variability between the soils within the corridor and outside the former rail corridor.  Mr. Gomes further testified that he did not consider the CSRs of the subject properties in his evaluation and they were not included in his report.  In this connection, Mr. Gomes testified that CSRs are an imperfect measure of soil productivity and that a farm with a lower recorded CSR could have a higher productivity than a farm with a higher recorded CSR.  The court finds that Mr. Gomes' testimony significantly undermined Mr. Schulte's valuation methodology with respect to both the cost of reclamation and the decreased value of properties based on CRS ratings of soils.

The government also presented the testimony of Mr. Voelker, a civil engineer, who testified to the cost of reclaiming former rail corridors.  He based his testimony on records from the Iowa Department of Transportation to arrive at estimated costs earthwork and gravel ballast work.  Mr. Voelker conceded on cross examination,

however, that farmers could both use and move ballast from the rail corridor without incurring the types of costs paid by the Department of Transportation for public projects by utilizing, for instance, a bulldozer.

For the plaintiffs, Mr. Nelsen testified regarding his methodology for valuing the subject agricultural properties and offered his opinion on just compensation. Mr. Nelsen testified that he understood, based on conversations with counsel, that he was not to consider the former rail corridor in valuing the properties as unencumbered in the before condition. He testified that he understood the word "unencumbered" to mean that the physical remnants of the abandoned rail line were not relevant to his valuation.[20] He explained that in his nearly thirty years of experience, he had never considered physical remnants from rail lines as operating as net negatives on property value. He further testified that he believed that consideration of such physical remnants, when instructed to appraise the land as unencumbered, would be contrary to the Yellow Book. He further explained that to the best of his knowledge, the Iowa Department of Transportation, the City of Des Moines, and the City of West De Moines, among other condemning authorities did not consider remnants when valuing properties for condemnation.

The plaintiffs also called Mr. Matthews and Mr. Hodge to support Mr. Nelsen's valuation approach. Mr. Matthews testified that he had previously appraised land in at least 18 rails-to-trails cases either as a joint appraiser or as an appraiser hired by the

---

[20] As stated above, the "before" condition is defined as the condition of the land just before the imposition of the railbanking easement by the subject NITU. At that time, there were in fact physical remnants of the abandoned rail lines like rail ties, ballast, and altered topography necessary to keep the rail lines flat and level over long distances.

plaintiffs.  He stated that, like Mr. Nelsen, he had never considered former railroad

remnants in those appraisals.  Mr. Matthews further testified that he believed it is

reasonable for an appraiser to disregard physical evidence of former rail use if instructed

to appraise the subject land as unencumbered.  According to Mr. Matthews, physical

remnants in the before condition—and associated remedial costs—are appropriate to

consider only when the appraiser is not given the instruction to appraise the parcel as

unencumbered.  Matthews Report at 7, PX 16.

In addition to his testimony with regard to the proper interpretation of

"unencumbered" in the before condition, Mr. Matthews also testified that Mr. Schulte's

use of CSR to set an acreage value for the property within the former corridor was wholly

unsupported.  Mr. Matthews explained that he had never seen CSR used in the manner in

which Mr. Schulte used it when valuing agricultural property.  In particular, Mr.

Matthews noted that small differences in CSRs, generally less than five points, do not

alter property or appraisal values.  He testified that a reasonable buyer would not change

an offer price based on the relatively slight differences in CSR averages calculated by

Mr. Schulte in his before and after appraisals.  Mr. Matthews explained that small

difference in value attributable to the corridors would not be sufficiently large to make

any real difference in value.  Mr. Matthews further testified that Mr. Schulte's

assumption that the entire one hundred foot width of the former rail corridor is made up

of severely compromised soil and thus significantly less valuable is not supported.  Mr.

Matthews testified, based on experience and as confirmed by photographs of reclaimed

rail corridors in Iowa that he reviewed, that it was likely that only twenty-five feet of the

one hundred foot corridor would be disturbed by the rail bed, gravel ballast, and slope.

Thus, contrary to Mr. Schulte's assumptions, Mr. Matthews testified that large portions of

the width of the corridor on either side of the rail bed would likely not have been

significantly disturbed by the railroad.  Mr. Matthews concluded, based on his knowledge

of railroad corridors, that Mr. Schulte's estimates of the proportion of disturbed land,

which served as the basis for his CSR and reclamation calculations, were greatly

overstated and thus wrong.

Mr. Hodge's testimony was consistent with both Mr. Nelsen's and Mr. Matthew's

testimony.  He noted that in the three previous rails-to-trails cases in which he was

engaged as a joint appraiser, he disregarded physical evidence of rail use where the

instruction stated to appraise the land in the before condition unencumbered by any

easement.[21]  Hodge Report at 2, DX 44.  Specifically, Mr. Hodge stated that, like Mr.

Nelsen, he did not consider the presence of ballast, rails, or ties on the agricultural land in

valuing the property in the before condition and that he "appraised the land as if no

railroad had ever traveled over the parcel."  Id.

To the extent that physical evidence of the former railroad should be considered,

Mr. Hodge testified, such consideration is properly limited to determining the land's

highest and best use.  Mr. Hodge testified that the Yellow Book requires the

---

[21] The government presented email correspondence with regard to one of those cases in which
the government objected to Mr. Hodge's disregard of the former rail corridor.  DX 127, 128.  Mr.
Hodge testified, however, that he rejected the government's email objection and excluded
consideration of the physical conditions in valuing the properties in his final report.  As
discussed above, he noted instead that he acknowledged in his report that the "as is" condition of
the former rail corridor might be relevant to determining highest and best use only.

determination of highest and best use as if the land were vacant and available for such use and that the resultant determination applies to the entire parcel.  As such, Mr. Hodge explained, it is inappropriate to consider potential restoration costs for separate and discrete sections of a larger parcel once the appraiser determines highest and best use for the entire parcel.  Therefore, Mr. Hodge testified, the Yellow Book's language requiring appraisers to appraise the land "as is," applies to the parcel's highest and best use and not to its valuation in the before condition.

Finally, the court heard testimony from plaintiff Curt Stille, a farmer who testified that, contrary to Mr. Schulte's opinion, he would reclaim the former rail line if it would avoid diagonal cuts through the property and allow him to farm in straight lines.[22]  Mr. Stille further stated that he had personal experience reclaiming land for row cropping and found that it could be done with relative ease.  He also testified that while there would be costs associated with reclamation of a rail corridor for row crop farming, the costs would be minimized with the help of neighbors and friends.

### 1. Mr. Nelsen's decision to disregard physical evidence of the former railroad in his before valuation is supported and does not call into question his before valuations of agricultural properties

The court finds Mr. Nelsen's methodology for appraising the subject agricultural properties was well supported and ultimately more persuasive than Mr. Schulte's approach.  The plaintiffs presented ample evidence to establish that Mr. Nelsen was well within the bounds of professional standards when he disregarded the physical remnants of

---

[22] The court heard extensive testimony on the issue of row cropping and point rows caused by diagonal cuts on farms.  These issues are discussed in greater detail in connection to bisected agricultural parcels' severance damages below.

railroad operations based on the instruction that he conduct his appraisals as if the properties were unencumbered in the before condition.  Mr. Nelsen's use of a hypothetical condition to effectuate this instruction was not improper.  He explained that he used a hypothetical condition in the before valuation, which allowed him to ignore any remnants of railroad use in the existing corridor because he understood that he was not to consider the former rail corridor in the unencumbered condition.  The evidence demonstrated that his understanding and approach has been used in many previous rails-to-trails cases.  Mr. Matthews and Mr. Hodge testified that the government itself, in previous rails-to-trails cases, has accepted appraisals of the before condition that do not consider physical evidence of the rail corridor.  In light of this history, the court finds that Mr. Nelsen's appraisal of agricultural properties without regard to the former rail corridor was proper.[23]

The court further finds that even if appraisers were required to account for the former rail corridor in their valuations, Mr. Schulte's approach was not supported.  The court finds that Mr. Schulte's cost of reclamation calculations and CSR determinations were too speculative to be given much weight.  With regard to reclamation costs, Mr. Schulte produced a series of calculations that had no basis in reality.  The testimony from Mr. Matthews, an experienced rails-to-trails appraiser, demonstrated that Mr. Schulte's

---

[23] To the extent the Yellow Book requires any consideration of the former rail corridor, which the court is not persuaded is necessary in rails-to-trails cases, the court finds that Mr. Hodge's explanation is sound and that the existence of the former corridor is relevant only with regard to determining highest and best use.  Once, as in these cases, the appraiser determines that agricultural use is the highest and best use, examination of the former corridor is not required.

assumptions regarding the amount of disturbed soils in the one-hundred-foot corridor were significantly overstated and the costs of reclaiming areas were, therefore, also vastly overstated.[24]  As discussed above, the evidence demonstrated that the area of disturbed soils on former rail corridors is likely to be no more than twenty-five feet wide and thus Mr. Schulte's calculations based on a reclamation of a full one hundred foot corridor based simply on four samples from Mr. Gomes were not reliable.  Indeed, one of Mr. Gomes' samples demonstrated that the soil within the corridor and outside the corridor were the same.  In addition, Mr. Schulte's reliance on commercial reclamation rates to estimate the cost of reclamation based on Mr. Voelker's work was not substantiated.  The court finds that Mr. Nelsen's and Mr. Stille's testimony regarding the ability of farmers to reclaim areas on their own with their own equipment is persuasive and that the use of commercial rates to determine the cost of removing ballast and reclaiming was not supported.

### 2.      Mr. Schulte's use of CSR was not supported

The court also finds that Mr. Schulte's use of CSR as a means to lower the appraised value of agricultural parcels in the before condition was not appropriate. Moreover, it was not supported.  The court was persuaded by the evidence presented by Mr. Matthews and Mr. Gomes (a government expert) that small differences in CSR would not diminish property values.  First, the evidence established that CSR is an imperfect measure of soil productivity.  It does not, as Mr. Gomes testified, capture all

---

[24] The court notes that Mr. Gomes took only four core samples, which Mr. Schulte then used to extrapolate conditions throughout the entire corridor.  The court agrees with plaintiffs that Mr. Schulte's conclusions based on this limited sampling are not supported.

relevant factors that affect soil productivity.  Indeed, Mr. Gomes testified that a farm with a lower CSR could be more productive—and therefore worth more—than a farm with a higher CSR.  This is due in part to the fact that CSR does not, for example, incorporate a farm's slope, which affects productivity.  Second, the evidence established that Mr. Schulte had no basis for arbitrarily deciding to assign a CSR of 50 for portions of the former rail corridor he assumed would be reclaimed and 20 or 30 CSR for portions he decided would not be reclaimed.  Mr. Schulte is not an expert in soil science or agronomy.  Further he could not identify a report, study, or any factual basis for these estimates.  The only agronomist to testify, Mr. Gomes, did not mention CSR in his report.  Finally, Mr. Schulte provides no support for his opinion that the relationship between minute increases in CSR and land value is a 1:1 relationship.  In his analysis, Mr. Schulte increased the value of parcels in the after condition one percentage point for each percentage increase in the parcel's "after condition CSR" compared to the parcel's "before condition CSR."  To the extent that there may be some relationship between CSR and property value, no evidence was provided supporting the extent and nature of that relationship.  Accordingly, the court rejects the government's value adjustments based on the CSR.

When the charge for reclamation in the before condition and the adjustment for soil quality in the after condition are factored out of Mr. Schulte's analysis, his just compensation numbers approximated Mr. Nelsen's.  Because the court finds that Mr. Nelsen's approach was sound, the court adopts Mr. Nelsen's calculated just compensation values for the below-listed non-bisected agricultural parcels:

Plaintiff Kenneth Smalley (<u>Rasmuson</u> parcel 1) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel number is 132830000400. Mr. Nelsen appraised the plaintiff's property and determined just compensation of $5,626.43 based on a before value of $3,200 per acre and an after value of $3,200 per acre. Mr. Schulte based his just compensation determination of $2,400 on a before per-acre value of $3,040 and an after per-acre value of $3,115. The court awards Kenneth Smalley just compensation in the amount of $5,626.43.

Plaintiff Dean Jurgens (<u>Rasmuson</u> parcel 2) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel number is 132830000500. Mr. Nelsen appraised the plaintiff's property and determined just compensation of $5,626.43 based on a before value of $3,200 per acre and an after value of $3,200 per acre. Mr. Schulte based his just compensation determination of $2,400 on a before per-acre value of $3,100 and an after per-acre value of $3,290. The court awards Dean Jurgens just compensation in the amount of $5,626.43.

 Plaintiff Marcia Schlicting Wilson (<u>Rasmuson</u> parcel 5.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel number is 132730000500. Mr. Nelsen appraised the plaintiff's property and determined just compensation of $4,869.38 based on a before value of $3,200 per acre and an after value of $3,200 per acre. For parcel 5.B, Mr. Schulte concluded that just compensation should be $2,100 based on a before per-acre value of $2,920 and an after

per-acre value of $2,940.  The court awards Marcia Schlicting Wilson just compensation in the amount of $4,869.38.[25]

Plaintiffs Paul and Phyllis Willis (<u>Rasmuson</u> parcel 6.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel number is 132730000600.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $4,869.38 based on a before value of $3,200 per acre and after value of $3,200 per acre.  Moreover, Plaintiff Oscar Floy Estate, Trustee Paul Willis (<u>Rasmuson</u> parcel 6.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 132630000100.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $5,788.13 based on a before value of $3,200 per acre and after value of $3,200 per acre.  Mr. Schulte, who appraised parcels 6.B and 6.C together,[26] based his just compensation determination of $4,300 on a before per-acre value of $2,600 and an after per-acre value of $2,630.  The court awards Paul and Phyllis Willis $4,869.38 and the Oscar Floy Estate, Trustee Paul Willis $5,788.13 as just compensation.

---

[25] The government argues that a small bridge over a stream in the former right-of-way would further increase reclamation costs.  Since the court finds that physical remnants of railroad use are only appropriately considered to the extent that they change highest and best use, and that the photo of the bridge demonstrates that it is very small, the court rejects the government's argument.

[26] It is unclear to the court why the parties took differing approaches appraising parcels 6.B and 6.C and particularly why they disagreed, at this point in the litigation, on the correct owner of parcel 6.C.  The court notes here that the parties previously stipulated that Paul and Phyllis Willis were the owners of parcel 6.B and that the Oscar Floy Estate was the owner of parcel 6.C.  <u>See</u> Joint Status Report, Ex. 1 at 1, ECF No. 48.

Plaintiff Duane Mabb (<u>Rasmuson</u> parcels 8.A, 8.B, 8.F) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 132630000200, 132510000200, 132630000400.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $13,917 based on a before value of $3,100 per acre and an after value of $3,100 per acre.  Mr. Schulte based his just compensation determination of $3,000 on a before per-acre value of $2,440 and an after per-acre value of $2,460.  The court awards Duane Mabb $13,917 as just compensation.[27]

Plaintiff Lory Floy Harrington (<u>Rasmuson</u> parcel 9.D) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 132510000100.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $3,411.14 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $700 on a before per-acre value of $1,840 and an after per-acre value of $1,850.  The court awards Lory Floy Harrington $3,411.14 as just compensation.

Plaintiff John Ingebreston (<u>Rasmuson</u> parcels 10.A, 10.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 132430000300, 132430000600.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $7,434 based on a before value of $2,950 per acre and an after value of $2,950 per acre.  Mr. Schulte based his just compensation

---

[27] The court finds that the roadway that runs between the corridor and the remainder tract would not have an effect on the use of the land, as the government argues, and would otherwise be <u>de minimis</u>.

determination of $1,500 on a before per-acre value of $2,340 and an after per-acre value

of $2,350.  The court awards John Ingebreston $7,434 as just compensation.

Plaintiff Rex C. Engebreston and Eleanor M. Engebreston Grantor Trust

(Rasmuson parcels 11.A, 11.B) owned land adjacent to and underlying the former

railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are

132430000700, 132445100100.  Mr. Nelsen appraised the plaintiff's property and

determined just compensation of $9,026 based on a before value of $2,850 per acre and

an after value of $2,850 per acre.  Mr. Schulte based his just compensation determination

of $3,200 on a before per-acre value of $2,420 and an after per-acre value of $2,460.  The

court awards the Rex C. Engebreston and Eleanor M. Engebreston Trust $9,026 as just

compensation.[28]

Plaintiff Thomas Floy (Rasmuson parcels 17.A, 17.B, 17.C) owned land adjacent

to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's

parcel numbers are 141917600200, 141912600600, 141920000600.  Mr. Nelsen

appraised the plaintiff's property and determined just compensation of $10,868.73 based

on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte

based his just compensation determination of $3,900 on a before per-acre value of $2,940

---

[28] While the corridor bisects parcel 11.B, neither party calculated shape adjustments with regard to this claim because no point rows were created by virtue of the placement of the corridor, which is why this parcel is listed under this section.  However, Mr. Nelsen calculated other severance damages because the corridor severed a small portion of the northwestern corner of parcel 11.B, reducing its utility to the extent that Mr. Nelsen considered it an uneconomic remnant, which is a piece of land with no utility.  Accordingly, he incorporated this value into his shape adjustment.

and an after per-acre value of $3,030.  The court awards Thomas Floy $10,868.73 as just compensation.

Plaintiffs Delmar & Martha Brady, Rex C. Engebreston and Eleanor M. Engebreston Grantor Trust, and Iva M. Miller (Rasmuson parcels 18.A, 18.B, 18.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel numbers are 141917600600, 141920000200, 141920000700.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $10,047.52 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $3,500 on a before per-acre value of $2,450 and an after per-acre value of $2,510.  The court awards Delmar & Martha Brady, Rex C. Engebreston and Eleanor M. Engebreston Grantor Trust, and Iva M. Miller $10,047.52 as just compensation.

Plaintiff Edward Caspers (Rasmuson parcel 21) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 141630000100.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $9.983.87 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $3,600 on a before per-acre value of $3,034 and an after per-acre value of $3,170.  The court awards Edward Caspers $9,983.87 as just compensation.

Plaintiff Jurgens Farms Corporation (Rasmuson parcel 22) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 141630000200.  Mr. Nelsen appraised the plaintiff's property and

determined just compensation of $9,854.66 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $4,100 on a before per-acre value of $3,138 and an after per-acre value of $3,193.  The court awards Jurgens Farms Corporation $9,854.66 as just compensation.

Plaintiff David Meinders (Rasmuson parcel 25) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 141030000300.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $4,971.83 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $1,400 on a before per-acre value of $2,330 and an after per-acre value of $2,450.  The court awards David Meinders $4,971.83 as just compensation.

Plaintiff Betty F. Taylor Trust (Rasmuson parcel 32) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 140310000600.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $10,654 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $3,500 on a before per-acre value of $2,609 and an after per-acre value of $2,613.  The court awards the Betty F. Taylor Trust $10,654 as just compensation.

Plaintiffs Donald and Bonnie Bonner (Rasmuson parcels 34.A, 34.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel numbers are 103420000100, 102740000300.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $19,681.98 based on a before

value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $7,600 on a before per-acre value of $2,890 and an after per-acre value of $2,950.  The court awards Donald and Bonnie Bonner $19,681.98 as just compensation.

Plaintiff Martin Meier (Rasmuson parcels 35.A, 35.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 103420000700, 103420000200.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $9,981.08 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $4,200 on a before per-acre value of $3,210 and an after per-acre value of $3,280.  The court awards Martin Meier $9,981.08 as just compensation.

Plaintiff Dorothy M. Johnson Revocable Trust (Rasmuson parcels 36.A, 36.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 102740000400, 102720000400.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $19,748.50 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $7,500 on a before per-acre value of $2,810 and an after per-acre value of $2,960.  The court awards the Dorothy M. Johnson Revocable Trust $19,748.50 as just compensation.

Plaintiff Patricia Markwardt (Rasmuson parcel 37) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel

number is 102720000500.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $10,050.76 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $2,800 on a before per-acre value of $2,360 and an after per-acre value of $2,440.  The court awards Patricia Markwardt $10,050.76 as just compensation.

Plaintiff Constance Sue Bieber Revocable Trust (Rasmuson parcel 38.A) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel number is 102240000400.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $5,728.59 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $1,100 on a before per-acre value of $2,390 and an after per-acre value of $2,400.  The court awards the Constance Sue Bieber Revocable Trust $5,728.59 as just compensation.

Plaintiffs Robert Aastrup and Verna Aastrup (Rasmuson parcels 41.A, 41.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel numbers are 101230000100, 101215200500.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $8,342.55 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $4,300 on a before per-acre value of $3,290 and an after per-acre value of $3,310.  The court awards Robert Aastrup and Verna Aastrup $8,342.55 as just compensation.

Plaintiff Young Farms, Inc. (Rasmuson parcels 44.A, 44.B, 44.C, 44.D) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel numbers are 100140000100, 100120000400, 100120000200, 63640000400. Mr. Nelsen appraised the plaintiff's property and determined just compensation of $18,464 based on a before value of $3,200 per acre and an after value of $3,200 per acre. Mr. Schulte based his just compensation determination of $11,500 on a before per-acre value of $3,226 and an after per-acre value of $3,243. The court awards Young Farms, Inc. $18,464 as just compensation.

Plaintiffs Bruce and Sharon Evans (Rasmuson parcel 45) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiffs' parcel number is 100140000200. Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $4,519.96 based on a before value of $3,200 per acre and an after value of $3,200 per acre. Mr. Schulte based his just compensation determination of $2,600 on a before per-acre value of $3,208 and an after per-acre value of $3,212. The court awards Bruce and Sharon Evans $4,519.96 as just compensation.

Plaintiffs Terry and Rita Hansen (Rasmuson parcels 46.A, 46.B, 46.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiffs' parcel numbers are 100120000500, 100120000600, 10020000300. Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $13,369.21 based on a before value of $3,200 per acre and an after value of $3,200 per acre. Mr. Schulte based his just compensation determination of $5,400 on a before per-acre value of $3,140

and an after per-acre value of $3,190.  The court awards Terry and Rita Hansen $13,369.21 as just compensation.

Plaintiff Maureen Pals (<u>Rasmuson</u> parcels 48.A, 48.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 73110000500, 73120000600.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $11,588 based on a before value of $1,800 per acre and an after value of $2,200 per acre.  Mr. Schulte based his just compensation determination of $9,500 on a before per-acre value of $3,050 and an after per-acre value of $3,110.  The court awards Maureen Pals $11,588 as just compensation.

Plaintiff Barbara K. Petersen (<u>Rasmuson</u> parcels 50.A, 50.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 70320000200, 73020000600.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $7,505.89 based on a before value of $3,200 per acre and an after value of $3,200 per acre.  Mr. Schulte based his just compensation determination of $2,500 on a before per-acre value of $2,490 and an after per-acre value of $2,570.  The court awards Barbara K. Petersen $7,505.89 as just compensation.

Plaintiff Berniece Hopkins (<u>Jenkins</u> parcel 12) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 11124000006.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $4,470 based on a before value of $3,100 per acre and an after value of $3,100 per acre.  Mr. Schulte based his just compensation determination of $2,300 on

a before per-acre value of $3,490 and an after per-acre value of $3,560.  The court awards Berniece Hopkins $4,470 as just compensation.

Plaintiff Rhinehart Farms, Inc. (Jenkins parcels 13.A, 13.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 1112400003, and 1112300002.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $11,487 based on a before value of $3,100 per acre and an after value of $3,100 per acre.  Mr. Schulte based his just compensation determination of $4,400 on a before per-acre value of $3,485 and an after per-acre value of $3,515.  The court awards Rhinehart Farms, Inc. $11,487 as just compensation.

Plaintiff Willma J. Pollard Revocable Trust (Jenkins parcel 16) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 11024760003.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $4,311 based on a before value of $3,100 per acre and an after value of $3,100 per acre.  Mr. Schulte based his just compensation determination of $2,400 on a before per-acre value of $3,410 and an after per-acre value of $3,450.  The court awards the Willma J. Pollard Revocable Trust $4,311 as just compensation.

Plaintiffs Jean Royer Dyer and Mary Belle Royer (Jenkins parcel 48) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel number is 0727400002.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $2,285 based on a before value of $3,100 per acre and an after value of $3,100 per acre.  Mr. Schulte based his just compensation

determination of $1,200 on a before per-acre value of $3,500 and an after per-acre value of $3,520.  The court awards Jean Royer Dyer and Mary Belle Royer $2,285 as just compensation.

Plaintiff Richard and Florence DeBoest Revocable Trust (Jenkins parcel 49) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 0727300001.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $1,640 based on a before value of $3,100 per acre and an after value of $3,100 per acre.  Mr. Schulte based his just compensation determination of $600 on a before per-acre value of $3,380 and an after per-acre value of $3,395.  The court awards the Richard and Florence DeBoest Revocable Trust $1,640 as just compensation.

Plaintiff Minburn Properties (Jenkins parcel 52) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 0721100009.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $6,921 based on a before value of $3,250 per acre and an after value of $3,250 per acre.  Mr. Schulte based his just compensation determination of $2,000 on a before per-acre value of $3,440 and an after per-acre value of $3,530.  The court awards Minburn Properties $6,921 as just compensation.

Plaintiffs Mark and Beth Erb (Jenkins parcels 68.A, 68.B, 68.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel numbers are 0707226001, 0706400006, 0706400001.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $8,387.60 based

on a before value of $3,110 per acre and an after value of $3,110 per acre.  Mr. Schulte

based his just compensation determination of $5,400 on a before per-acre value of $3,430

and an after per-acre value of $3,500.  The court awards Mark and Beth Erb $8,387.60 as

just compensation.

Plaintiffs David and Sue Roush, Helen McLean and Edna Young (Jenkins parcel

78) owned land adjacent to and underlying the former railroad right-of-way on the date of

taking.  The plaintiffs' parcel number is 0223400004.  Mr. Nelsen appraised the

plaintiffs' property and determined just compensation of $3,212 based on a before value

of $3,180 per acre and an after value of $3,180 per acre.  Mr. Schulte based his just

compensation determination of $1,700 on a before per-acre value of $3,370 and an after

per-acre value of $3,410.  The court awards David and Sue Roush, Helen McLean, and

Edna Young $3,212 as just compensation.

Plaintiff Eden Enterprises, Inc. (Jenkins parcels 79.A, 79.B) owned land adjacent

to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's

parcel numbers are 0223300001, 0223100007.  Mr. Nelsen appraised the plaintiff's

property and determined just compensation of $8,344 based on a before value of $3,180

per acre and an after value of $3,180 per acre.  Mr. Schulte based his just compensation

determination of $2,600 on a before per-acre value of $3,410 and an after per-acre value

of $3,540.  The court awards Eden Enterprises, Inc. $8,344 as just compensation.

Plaintiff Margaret Rowe (Jenkins parcels 81.A, 81.B) owned land adjacent to and

underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel

numbers are 0223100004, 0223100001.  Mr. Nelsen appraised the plaintiff's property and

determined just compensation of $6,548 based on a before value of $3,180 per acre and an after value of $3,180 per acre. Mr. Schulte based his just compensation determination of $2,800 on a before per-acre value of $3,410 and an after per-acre value of $3,440. The court awards Margaret Rowe $6,548 as just compensation.

Plaintiffs Ronald Bender, Joy Hawbaker, and Nancy Lucklow (Jenkins parcels 83.A, 83.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiffs' parcel numbers are 0222200003, 0215400001. Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $16,234 based on a before value of $3,110 per acre and an after value of $3,110 per acre. Mr. Schulte based his just compensation determination of $6,000 on a before per-acre value of $3,340 and an after per-acre value of $3,410. The court awards Ronald Bender, Joy Hawbaker, and Nancy Lucklow $16,234 as just compensation.

Plaintiff Doris V. Bender Revocable Trust (Jenkins parcels 84.A, 84.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel numbers are 0215400009, 0215400003. Mr. Nelsen appraised the plaintiff's property and determined just compensation of $7,677 based on a before value of $3,110 per acre and an after value of $3,110 per acre. Mr. Schulte based his just compensation determination of $3,000 on a before per-acre value of $3,360 and an after per-acre value of $3,460. The court awards the Doris v. Bender Revocable Trust $7,677 as just compensation.

Plaintiffs Jerry and Vicki Lage (Jenkins parcel 85) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiffs' parcel

number is 0215400010.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $2,429 based on a before value of $3,110 per acre and an after value of $3,110 per acre.  Mr. Schulte based his just compensation determination of $600 on a before per-acre value of $3,140 and an after per-acre value of $3,210.  The court awards Jerry and Vicki Lage $2,429 as just compensation.

Plaintiff Audre Ferrier, Trustee of the Helen Moekley Trust (<u>Adkins</u> parcels 37.A, 37.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 812432300003 and 812432300001.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $6,033.08 based on a before value of $3,150 per acre and an after value of $3,150 per acre.  Mr. Schulte based his just compensation determination of $3,600 on a before per-acre value of $3,090 and an after per-acre value of $3,100.  The court awards Audre Ferrier, Trustee of the Helen Moekley Trust $6,033.08 as just compensation.

Plaintiffs James E. and Patricia R. Brady (<u>Adkins</u> parcels 38.A, 38.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel numbers are 812430400005 and 812430400001.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $8,527.43 based on a before value of $3,150 per acre and an after value of $3,150 per acre.  Mr. Schulte based his just compensation determination of $5,300 on a before per-acre value of $3,270 and an after per-acre value of $3,270.  The court awards James E. and Patricia R. Brady $8,527.43 as just compensation.

Plaintiff Jissom, Inc. (<u>Adkins</u> parcels 55.A, 55.B, 55.C, 55.D, 55.E, 55.F, 55.G) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel numbers are 1331325100, 1331175425, 1331175405, 1331205006, 1331125230, 1331150100, 1331150080. Mr. Nelsen appraised the plaintiff's property and determined just compensation of $35,000 based on a before value of $3,900 per acre and an after value of $3,900 per acre. Mr. Schulte based his just compensation determination of $16,200 on a before per-acre value of $3,680 and an after per-acre value of $3,680. The court awards Jissom, Inc. $35,000 as just compensation.

### C.    Bisected Agricultural Parcels

In addition to the parties' significant disagreements over how best to value the before condition of agricultural properties, they also disagreed on the appropriate approach to calculating severance damages with regard to bisected agricultural parcels. As stated previously, the court has separated out for purposes of this opinion those agricultural parcels that are bisected by the trails authorized by the NITUs. Bisected parcels are entitled to additional payments in the form of severance damages as part of just compensation. Both parties recognize that severance damages are appropriate and have made so-called "shape" adjustments in their just compensation calculations. As explained below, the bulk of the severance damages in this case result from the creation of "point rows" and the reduced value of farmland associated with point rows.

The undisputed evidence established that a parcel's physical shape affects its productivity and proper functioning. For row cropping, where a farmer establishes a series of rows to farm, such as with corn, a rectangular or square parcel is considered

ideal and most desirable. Row cropped agricultural land bound by straight lines and ninety-degree angles is particularly valuable because it allows farmers to most easily and efficiently seed, till, and harvest the land with large industrial farm equipment. In row cropped fields, farmers typically drive their industrial equipment up and down their parcels in straight lines, turning at ninety-degree angles along the boundaries. As the boundaries become irregular and angular, farmers experience increased difficulty in reaching the edges of those boundaries with their industrial farming implements. These angled areas give rise to "point rows." When faced with farming point rows, farmers must use modified and less efficient farming practices, resulting in higher production costs and/or lower yields because of repeated passes over the same land, destroyed or lost crops, and other inefficiencies. Agricultural land with point rows, therefore, is less valuable to farmers. In fact, some farmers, depending on the circumstances, sometimes elect to not farm these areas.

While the parties agreed that the creation of row crops resulting from the placement of the railroad corridor across the landowners' parcels reduces the value of their agricultural land and necessitates appropriate severance damages, they have disagreed as to the amount of those damages. The plaintiffs argue that Mr. Nelsen has correctly valued the impact of point rows on the value of the subject properties based on his years of appraisal experience of farmland in Iowa. They contend that Mr. Schulte created arbitrary percentage reductions in value ranging from 1% to 3% without any factual justification and that Mr. Schulte's 3% cap on severance damages significantly underestimated the impact of point rows on some of the plaintiffs' properties. The

government argues, in response, that Mr. Nelsen was exceedingly generous in his severance damages by providing too large of an adjustment due to point rows and other ambiguous "shape adjustments."

Mr. Nelsen's shape adjustment reductions were rooted in his calculation of the additional costs associated with farming a property with point rows, which together with his experience led him to establish a percentage adjustment for each property based on the point rows created by the easement.  To determine the increased costs associated with having to farm a parcel with point rows, Mr. Nelsen calculated the total area of the parcel affected by point rows—those parts where farming efficiency is lowered by the presence of new point rows resulting from the placement of the corridor.  Mr. Nelsen then assumed that the industrial farming equipment at the time of the taking was thirty feet wide and had a particular turning radius which allowed him to determine how many acres of overlapping farming is required based upon how many feet of angled right-of-way frontage exists on the parcel.  The total cost for overproduction was then determined by multiplying the average cost of production per acre[29] by the total area of overlap passes.  Since Mr. Nelsen concluded that there was some benefit in the overlap passes, he reduced the cost per acre by a certain estimated percentage.  Because the additional costs associated with point row farming results in an annual charge, Mr. Nelsen capitalized the

---

[29] Mr. Nelsen obtained the average cost of production per acre from historical data maintained by Iowa State University.

costs.  He then used these costs as a starting point in deciding the percentage reduction in value based on shape.[30]

Mr. Schulte testified that he also calculated severance damages by determining the number of lineal feet of point rows created by the corridor.  Mr. Schulte explained that he then compared that number to the total number of acres in the parent tract of land.  He testified that the higher the ratio of lineal feet of point rows created by the right of way to the total number of acres of the parent tract, the greater the severance damages created by point rows.  Mr. Schulte explained that the same number of lineal feet of point rows would have a much larger impact on a smaller parcel than it would on a larger parcel because a greater percentage of the tillable land will be lost in smaller farms even if the same absolute number of acres is made less efficient to farm.  Mr. Schulte testified that he then assigned a shape adjustment of 1%, 2%, or 3% depending upon the relative amount of lineal feet of point rows and the square acres for each parent tract.[31]  He also explained that he included a "reasonable premium" to account for other downward shape adjustments, other than point rows, not captured in his point row calculation.

The plaintiffs offered the testimony of Mr. Matthews to rebut Mr. Schulte's 1%, 2%, or 3% shape adjustment approach.  Based on his review of Mr. Schulte's comparable sales, Mr. Matthews testified that Mr. Schulte's shape adjustments were too low for many

[30] The shape adjustments identified by Mr. Nelsen ranged from 3.1% to 5.9%.  In addition to shape adjustments, Mr. Nelsen included certain other adjustments related to access and land suitability for certain parcels.

[31] Mr. Schulte testified that he considered a shape adjustment of .5% for some parcels, but he applied only 1%, 2%, and 3% adjustments.

parcels.  Mr. Matthews testified that he took the same sales data that Mr. Schulte used to

determine land values and prepared a paired sales analysis to determine whether Mr.

Schulte's percentages were supported.  Based on his review, Mr. Matthews concluded

that, for most properties, Mr. Nelsen's shape adjustment percentages were actually

conservative and that Mr. Schulte's shape adjustments were too low.[32]  Mr. Matthews

explained that he performed his analysis by examining sales both with and without point

rows to determine the percentage loss due to point rows.  He then used this percentage

loss to determine a unit of measure for the quantity of point rows, which he calculated as

a loss per linear foot of point row, or as a percentage of the entire parent tract as a whole.

This allowed Mr. Matthews to determine the average percent loss in value of the farm

based upon the percentage of the farm physically affected by point rows.  Using Mr.

Schulte's sales data, Mr. Matthews testified that he found a 1:1 ratio in which every

percentage point of the farm affected by point rows reduced the value of the parcel by

one percent.[33]

---

[32] Mr. Schulte did not conduct a paired sales analysis with respect to determining the point row adjustments.  He agreed, however, that it could be done and that Mr. Matthews' methodology appeared to be sound.  Mr. Nelsen did not prepare a paired sales analysis.

[33] Counsel for the government challenged Mr. Matthews' study based on his assumption that farm equipment would have an 88 foot radius when determining the amount of point row damage.  Counsel argued that if Mr. Matthews had used a 50 foot assumption that there would be less of an area affected by point rows.  Mr. Matthews disagreed and presented a calculation which proved his point to the court's satisfaction.  Moreover, the court finds the objection largely irrelevant.  As Mr. Matthews explained, his goal was to create a consistent evaluation across all of the sale properties he examined to determine if there was a pattern and thus he needed to use a consistent measure for each case.

The plaintiffs argue, based on Mr. Matthew's testimony, that Mr. Schulte's use of 1%, 2%, or 3% for his shape adjustment lacked support and was arbitrary.[34] They contend that he did not support his 1% - 3% numbers with any data. They also argue that Mr. Schulte improperly made downward shape adjustments in the before condition, lowering the value of the property in the before condition. They assert that, like reclamation costs and CSR in the before condition, such point rows should be ignored.

The government argues that Mr. Nelsen also failed to support his shape adjustments, contending that his percentage reductions represent severance damages that are far greater than the additional farming cost calculations identified in his expert report. The government argues that Mr. Nelsen did not provide an explanation for severance damages over and above the amount calculated for the additional costs associated with farming point rows. They also argue that in calculating the impact of point rows, Mr. Nelsen incorporated point rows that were located on the property prior to the new easement. These break down into two basic categories: (1) those point rows that exist by virtue of conditions on the parcel, including creeks, and streams (2) those point rows that would have existed regardless of the placement of the easement because the subject parcels have diagonal boundaries regardless.

---

[34] Government counsel also took issue with Mr. Matthews' analysis, arguing that it was flawed in various respects and therefore unreliable. The court has reviewed government counsel's arguments and finds that while Mr. Matthews' paired sales analysis may not have been perfect, it was prepared by an acknowledged expert and sufficiently supported to be of value to the court. Based upon the testimony presented at trial, moreover, the court notes that, by their nature, appraisals involve the use of judgment and do not lend themselves to one "correct" answer. As such, the background of the appraiser and experience is critical to the court's evaluation of the testimony. Here, the court determines that Mr. Schulte's use of percentages from 1% to 3% was not supported by the data Mr. Schulte relied upon and was arbitrary.

The court finds that Mr. Nelsen's opinions regarding severance damages[35] were supported by both his own testimony and Mr. Matthews' testimony and that together their opinions were more persuasive than Mr. Schulte's.  In this connection, the court notes that appraisal work requires appraisers to exercise judgment and that, with respect to agricultural properties, Mr. Nelsen had more extensive experience in valuing agricultural properties when compared to Mr. Schulte.  For this reason the court gives greater weight to Mr. Nelsen's opinion with regard to severance damages.[36]

---

[35] The government argued that for those parcels associated with (1) Rasmuson claims 20 and 33 and (2) Jenkins claims 71 and 76, severance damages are inappropriate because they assume that the landowners have no access to these uneconomic remnants or otherwise severed parcel portions that would still have utility if there were access.  Def. Post Trial Br. 12 n.5.  At trial, the government presented a series of aerial pictures depicting indentations across the railroad, which the government contends demonstrated that the landowners of many of these parcels had access and continue to have access to the severed portions.  Further, the government argues that "Trails Act easements do not frustrate pre-existing, undocumented crossing rights."  Def. Post Trial Br. 12 n.5 (citing Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 457 (2013) (holding that where a trail use agreement expressly preserves existent servitudes, a plaintiff may not claim severance damages for lack of access even if the easement is undocumented)).  The government cited Iowa Code § 327G.11, which provides that railroad corporations must build and maintain crossings across corridors upon request by farmer landowners, to stand for the proposition that the subject plaintiffs established legal easements across the corridor and therefore have access to severed sections of the parcels.

The court does not agree.  The provision cited by the government requires only that railroad corporations provide access across railroad corridors.  The statute does not suggest that such rights continue to exist after the railroad company relinquishes control over the corridor or that  it continues to exist upon placement of a recreational easement.  Further, such permissive use undercuts any potential argument the government may make that the landowners obtained, for instance, prescriptive easements.  Even if the plaintiffs did at one point have crossing rights, the government points to no language in any of the trail use agreements or NITUs to suggest that any possible rights were preserved as was the case in Dana R. Hodges Trust.  Accordingly, the court finds that severance damages are appropriate.

[36] As stated before, Mr. Nelsen has extensive experience appraising agricultural lands.  Mr. Schulte testified that he had relatively limited experience.  Moreover, Mr. Nelsen has personal experience with farming, whereas Mr. Schulte does not.

Therefore, except for those parcels that had diagonal boundaries without regard to the trail easement, which Mr. Nelsen agreed could lead to inflated shape adjustments, the court adopts Mr. Nelsen's shape adjustment calculations.[37]  For cases in which Mr. Nelsen may have overestimated the shape adjustment by neglecting to account for pre-existing angles on the property present for reasons other than the placement of the easement, the court will apply Mr. Matthews' shape adjustment percentages, if they are smaller than Mr. Nelsen's.[38]  With regard to the bisected agricultural parcels the court finds as follows:

Plaintiff Gloria Floy Troeger (Rasmuson parcels 7.A, 7.B, 7.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 132740000300, 132740000400, 132740000200.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $43,160

---

[37] The court rejects the government's contention that a correction must also be made as Mr. Nelsen failed to account for point rows created by natural conditions on the parcel, such as creeks, ponds, or trees.  The government argues that the affected parcels are associated with (1) Rasmuson claims 5, 6, 8, 24, 33, and 39; (2) Jenkins claims 10, 47, 47N, 69, and 76; and (3) Adkins claims 34 and 39.  The government, either through Mr. Schulte's testimony or otherwise, has not attempted to quantify the potential impact that these natural conditions had on Mr. Nelsen's shape adjustment.  The court, therefore, has no means of considering or providing a correction.  Moreover, a review of Mr. Matthews' study reveals that Mr. Nelsen's shape adjustment percentage with regard to the allegedly affected parcels would be insignificant, in any case.

[38] The affected parcels are those associated with (1) Rasmuson claim 26; and (2) Jenkins claims 14, 47, 47N, and 51.

In reviewing the parties computations, the court notes that the parties and their experts have rounded calculations at some points and have declined to do so at others.  The court does not find any particular consistency with the rounding methodology across the parties' submissions.  Accordingly, where the court applies its own calculations, it has not endeavored to round its computations aside from the final just compensation amounts.

based on a before value of $3,200 per acre and an after value of $3,040 per acre.  Mr. Schulte based his just compensation determination of $15,700 on a before per-acre value of $3,000 and an after per-acre value of $2,940.  Mr. Nelsen's shape adjustment is 5.00%, Mr. Schulte's is 3%, and Mr. Matthews' is 6.8%.  The court awards Gloria Floy Troeger $43,160 as just compensation.

Plaintiff Schmachers Farms, Inc. (Rasmuson parcels 19.A, 19.B, 19.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 141920000300, 141730000800, 141730000500.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $41,782 based on a before value of $3,200 per acre and an after value of $3,100 per acre.  Mr. Schulte based his just compensation determination of $18,600 on a before per-acre value of $2,610 and an after per-acre value of $2,580.  Mr. Nelsen's shape adjustment is 3.10%, Mr. Schulte's is 2%, and Mr. Matthews' is 5.70%.  The court awards the Schumachers Farms, Inc. $41,782 as just compensation.

Plaintiffs Mark and Brenda Rasmuson (Rasmuson parcels 20.A, 20.B, 20.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel numbers are 141740000300, 141740000200, 141740000400.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $66,691 based on a before value of $3,200 per acre and an after value of $3,040 per acre.  Mr. Schulte based his just compensation determination of $20,700 on a before per-acre value of $3,283 and an after per-acre value of $3,283.  Mr. Nelsen's

shape adjustment is 5.0%, Mr. Schulte's is 3%, and Mr. Matthews' is 7.30%.  The court awards Mark and Brenda Rasmuson $66,691 as just compensation.

Plaintiffs Curtis and Pamela Stille (Rasmuson parcels 24.A, 24.B, 24.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel numbers are 141620000400, 141510000800, 141510000200.[39]  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $31,280 based on a before value of $3,200 per acre and an after value of $3,100 per acre.  Mr. Schulte based his just compensation determination of $6,600 on a before per-acre value of $3,030 and an after per-acre value of $3,060.  Mr. Nelsen's shape adjustment is 4.6%, Mr. Schulte's is 0%, and Mr. Matthews' is 5.4%.  The court awards Curtis and Pamela Stille $31,280 as just compensation.

---

[39] The parties disputed the size of the subject parent tract, which affects the magnitude of the shape adjustment.  Since the parcels were owned variably by Curtis Stille, Pamela Stille, or both, the plaintiffs argue that only those parcels where there existed unity of ownership between Curtis Stille and Pamela Stille—that is where both owned the subject parcels—should be considered the parent tract.  The government argues that all parcels, regardless of whether one or the other held ownership, should be considered the parent tract, because Curtis Stille and Pamela Stille are named plaintiffs.

The court agrees with the plaintiffs and will use the smaller tract to determine the impact of point rows.  The Yellow Book requires unity of ownership where "all parts of the whole had to be vested to the same extent in the same persons."  YELLOW BOOK at 47.  The Yellow Book states that unity of ownership has been found lacking where one tract was owned by a husband and a second was owned by his wife.  Id. at 48 (citing United States v. Stewart, 658, 660-61 (E.D. Tenn. 1976) (holding that no unity of ownership exists where husband and wife separately own, but jointly farm, contiguous parcels)).  Accordingly, the court accepts Mr. Nelsen's just compensation determination.

Plaintiff D&J Corporation (<u>Rasmuson</u> parcels 26.A, 26.B, 26.C, 26.D) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.[40]   The plaintiff's parcel numbers are 141030000400, 141030000100, 141030000200, 141017700100.   Mr. Nelsen appraised the plaintiff's property and determined just compensation of $97,306 based on a before value of $3,100 per acre and an after value of $2,950 per acre.   Mr. Schulte based his just compensation determination of $13,200 on a before per-acre value of $2,260 and an after per-acre value of $2,260.   Mr. Nelsen's shape adjustment is 4.8%, Mr. Schulte's is 1%, and Mr. Matthews' is 2.10%.   The court awards D&J Corporation $56,241 as just compensation, applying Mr. Matthews' shape adjustment.

Plaintiff A&A Greet Acres, Inc. (<u>Rasmuson</u> parcels 31.A, 31.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.   The plaintiff's parcel numbers are 140330000400, 140330000200.   Mr. Nelsen appraised the

---

[40] The parties disagreed as to the size of the parent tract associated with these four parcels, which leads to a fairly large disparity in the severance damage percentages calculated by Mr. Nelsen, Mr. Matthews, and Mr. Schulte.   While the parties agree that 7.67 acres were taken, Mr. Schulte's report indicates a measured parent tract in the before condition of 506.35 acres, while Mr. Nelsen's summary report indicates a measured parent tract of 363.9 acres in the before condition, without disaggregating the measurements of each parcel in the parent tract.   As noted, the smaller the parent track, the greater the impact of each marginal point row and thus the greater amount of severance damage even for the same area impacted.

The court notes, however, that the plaintiffs list the parent tract measurement in the before condition as 497.77 acres in their final just compensation calculations, rather than the 363.9 acres which appears in Mr. Nelsen's summary report. PX 6.A  Because this difference was not discussed at trial, the court has determined, based on the full reports and calculations received into evidence, that the larger parcel size, which is similar to Mr. Schulte's parcel size, is correct. To account for this change from Mr. Nelsen's report, the court has determined that Mr. Matthew's lower shape adjustment should apply because it was apparently calculated based on the larger parent tract.

plaintiff's property and determined just compensation of $55,353 based on a before value

of $3,100 per acre and an after value of $2,950 per acre.  Mr. Schulte based his just

compensation determination of $29,200 on a before per-acre value of $3,047 and an after

per-acre value of $2,980.  Mr. Nelsen's shape adjustment is 4.8%, Mr. Schulte's is 3%,

and Mr. Matthews' is 4.50%.  The court awards A&A Greet Acres, Inc. $55,353 as just

compensation.

Plaintiffs David and Carolyn Just (Rasmuson parcels 33.A, 33.B, 33.C, 33.D)

owned land adjacent to and underlying the former railroad right-of-way on the date of

taking.  The plaintiffs' parcel numbers are 140320000300, 140320000100,

103440000300, 103440000100.  Mr. Nelsen appraised the plaintiffs' property and

determined just compensation of $86,067 based on a before value of $2,780 per acre and

an after value of $2,630 per acre.  Mr. Schulte based his just compensation determination

of $26,800 on a before per-acre value of $2,300 and an after per-acre value of $2,290.

Mr. Nelsen's shape adjustment is 5.4%, Mr. Schulte's is 3%, and Mr. Matthews' is 6.1%.

The court awards David and Carolyn Just $86,067 as just compensation.

Plaintiffs John Carstens and Janet Rodemeyer (Rasmuson parcels 39.A, 39.B,

39.C) owned land adjacent to and underlying the former railroad right-of-way on the date

of taking.  The plaintiffs' parcel numbers are 101410000400, 101420000300,

1014200000100.  Mr. Nelsen appraised the plaintiffs' property and determined just

compensation of $93,765 based on a before value of $3,250 per acre and an after value of

$3,100 per acre.  Mr. Schulte based his just compensation determination of $24,800 on a

before per-acre value of $3,350 and an after per-acre value of $3,330.  Mr. Nelsen's

shape adjustment is 4.6%, Mr. Schulte's is 1%, and Mr. Matthews' is 2.70%. The court awards John Carstens and Janet Rodemeyer $93,765 as just compensation.

Plaintiffs Delton and Lee Ann Dixon (Rasmuson parcels 47.A, 47.B, 47.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiffs' parcel numbers are 73130000300, 73130000100, 73130000200. Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $43,736 based on a before value of $3,200 per acre and an after value of $3,040 per acre. Mr. Schulte based his just compensation determination of $19,900 on a before per-acre value of $3,330 and an after per-acre value of $3,280. Mr. Nelsen's shape adjustment is 5.0%, Mr. Schulte's is 3%, and Mr. Matthews' is 7.80%. The court awards Delton and Lee Ann Nixon $43,736 as just compensation.

Plaintiffs Charles and Beverly McMurray, and John and Cathy McMurray (Rasmuson parcels 49.A, 49.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiffs' parcel numbers are 073040000300, 073040000100, 073040000200, 073040000400. Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $43,797 based on a before value of $3,200 per acre and an after value of $3,040 per acre. Mr. Schulte based his just compensation determination of $15,200 on a before per-acre value of $3,224 and an after per-acre value of $3,206. Mr. Nelsen's shape adjustment is 5.0%, Mr. Schulte's is 2%, and Mr. Matthews' is 7.10%. The court awards Charles and Beverly McMurray $43,797 as just compensation.

Shattuck Corporation (<u>Jenkins</u> parcels 10.A & 10.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 1218300001 and 1218100004.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $46,595 based on a before value of $3,100 per acre and an after value of $2,950 per acre.  Mr. Schulte based his just compensation determination of $22,700 on a before per-acre value of $3,530 and an after per-acre value of $3,510.  Mr. Nelsen's shape adjustment is 4.8%, Mr. Schulte's is 2%, and Mr. Matthews' is 5.20%.  The court awards Shattuck Corporation $46,595 as just compensation.

Plaintiff Bestenlehner Trust (<u>Jenkins</u> parcels 11.A, 11.B, 11.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 1113200007, 1113200004, and 1113200002.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $39,156 based on a before value of $3,100 per acre and an after value of $2,945 per acre.  Mr. Schulte based his just compensation determination of $16,600 on a before per-acre value of $3,630 and an after per-acre value of $3,580.  Mr. Nelsen's shape adjustment is 5.0%, Mr. Schulte's is 3%, and Mr. Matthews' is 6.00%.  The court awards the Bestenlehner Trust $39,156 as just compensation.

Plaintiff Eby Land Company (<u>Jenkins</u> parcels 14.A, 14.B, 14.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 1112100007, 1112100005, and 1112100001.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $32,461 based on

a before value of $3,100 per acre and an after value of $2,975 per acre.  Mr. Schulte

based his just compensation determination of $9,000 on a before per-acre value of $3,430

and an after per-acre value of $3,460.  Mr. Nelsen's shape adjustment is 4.0%, Mr.

Schulte's is 1%, and Mr. Matthews' is 3.6%.  The court awards Eby Land Company

$30,674 as just compensation, applying Mr. Matthews' shape adjustment.

Plaintiff Midwest Oil Seeds, Inc. (Jenkins parcels 47.A, 47.B, 47.C, 47.D, 47.E,

47.F, 47.G, 47.H, 47.I) owned land adjacent to and underlying the former railroad right-

of-way on the date of taking.  The plaintiff's parcel numbers are 0734200006,

0727300005, 0727300002, 0727100006, 0727100007, 0727100001, 0728200006,

0728200007, 0721400003.  Mr. Nelsen appraised the plaintiff's property and determined

just compensation of $161,285 based on a before value of $3,100 per acre and an after

value of $2,945 per acre.  Mr. Schulte based his just compensation determination of

$51,809 on a before per-acre value of $3,480 and an after per-acre value of $2,591.  Mr.

Nelsen's shape adjustment is 5.9%, Mr. Schulte's is 1%, and Mr. Matthews' is 3.30%.

The court awards Midwest Oil Seeds, Inc. $ 122,036.93 as just compensation, applying

Mr. Matthews' shape adjustment.

Plaintiff Midwest Oil Seeds, Inc. (Jenkins parcels 47.K, 47.L, 47.M, 47.N, 47.O)

owned land adjacent to and underlying the former railroad right-of-way on the date of

taking.  The plaintiff's parcel numbers are 0601200003, 0236400004, 0236400002,

0225300005, 0225300003.  Mr. Nelsen appraised the plaintiff's property and determined

just compensation of $62,537 based on a before value of $3,100 per acre and an after

value of $2,870 per acre.  Mr. Schulte based his just compensation determination of

$26,000 on a before per-acre value of $3,480 and an after per-acre value of $3,450.  Mr. Nelsen's shape adjustment is 5.9%, Mr. Schulte's is 2%, and Mr. Matthews' is 4.50%. The court awards Midwest Oil Seeds, Inc. $53,955.82 as just compensation, applying Mr. Matthews' shape adjustment.

Plaintiff Elsie Rittgers and John Rittgers Trust (Jenkins parcels 50.A, 50.B, 50.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 0721100013, 0721100011, 0721100010.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $23,065 based on a before value of $3,100 per acre and an after value of $3,000 per acre.  Mr. Schulte based his just compensation determination of $10,800 on a before per-acre value of $3,410 and an after per-acre value of $3,440.  Mr. Nelsen's shape adjustment is 3.2%, Mr. Schulte's is 1%, and Mr. Matthews' is 5.80%.  The court awards the Elsie Rittgers and John Rittgers Trust $23,065 as just compensation.

Plaintiff Stine Seed Farm, Inc. (Jenkins parcels 51.A, 51.B, 51.C, 51.D, 51.E, 51.F) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 0721200003, 0716300004, 0717400002, 0717200003, 0717200001, 0223300004.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $126,762 based on a before value of $3,250 per acre and an after value of $3,125 per acre.  Mr. Schulte based his just compensation determination of $33,468 on a before per-acre value of $3,540 and an after per-acre value of $3,540.  Mr. Nelsen's shape adjustment is 3.8%, Mr. Schulte's is 1%, and Mr.

Matthews' is 1.20%. The court awards Stine Seed Farm, Inc. $63,917.75 as just compensation, applying Mr. Matthews' shape adjustment.

Plaintiff Linda Graham (Jenkins parcel 53) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel number is 0717100004. Mr. Nelsen appraised the plaintiff's property and determined just compensation of $14,530 based on a before value of $3,250 per acre and an after value of $3,140 per acre. Mr. Schulte based his just compensation determination of $6,500 on a before per-acre value of $3,640 and an after per-acre value of $3,620. Mr. Nelsen's shape adjustment is 4.0%, Mr. Schulte's is 2%, and Mr. Matthews' is 2.50%. The court awards Linda Graham $14,530 as just compensation.

Plaintiff Paul Purviance Trust (Jenkins parcels 55.B, 55.C, 55.D) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel numbers are 0708300004, 0708300002, 0708300006. Mr. Nelsen appraised the plaintiff's property and determined just compensation of $32,477 based on a before value of $3,200 per acre and an after value of $3,040 per acre. Mr. Schulte based his just compensation determination of $13,800 on a before per-acre value of $3,470 and an after per-acre value of $3,430. Mr. Nelsen's shape adjustment is 5.0%, Mr. Schulte's is 2%, and Mr. Matthews' is 6.10%. The court awards the Paul Purviance Trust $32,477 as just compensation.

Plaintiff William H. Burkett (Jenkins parcels 69.A, 69.B, 69.C) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel numbers are 0706100004, 0706100003, 0706100001. Mr. Nelsen

appraised the plaintiff's property and determined just compensation of $61,504 based on a before value of $3,110 per acre and an after value of $2,925 per acre.  Mr. Schulte based his just compensation determination of $20,745 on a before per-acre value of $3,450 and an after per-acre value of $3,450.  Mr. Nelsen's shape adjustment is 5.9%, Mr. Schulte's is 2%, and Mr. Matthews' is 7.80%.  The court awards William H. Burkett $61,504 as just compensation.

Plaintiff Marilyn C. Wasser Revocable Trust (<u>Jenkins</u> parcel 70) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 0236400001.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $19,978 based on a before value of $3,110 per acre and an after value of $3,015 per acre.  Mr. Schulte based his just compensation determination of $10,100 on a before per-acre value of $3,515 and an after per-acre value of $3,485.  Mr. Nelsen's shape adjustment is 3.1%, Mr. Schulte's is 2%, and Mr. Matthews' is 4.50%.  The court awards the Marilyn C. Wasser Revocable Trust $19,978 as just compensation.

Plaintiff Vivian F. Birdsall Estate (<u>Jenkins</u> parcel 71) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel number is 0236200003.  Mr. Nelsen appraised the plaintiff's property and determined just compensation of $20,344 based on a before value of $3,110 per acre and an after value of $3,000 per acre.  Mr. Schulte based his just compensation determination of $11,300 on a before per-acre value of $3,560 and an after per-acre value of $3,530.  Mr. Nelsen's

shape adjustment is 3.5%, Mr. Schulte's is 2%, and Mr. Matthews' is 3.40%.  The court awards the Vivian F. Birdsall Estate $20,344 as just compensation.

Plaintiffs Carl Schnoor and Sue Omestad (<u>Jenkins</u> parcels 72.A, 72.B) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel numbers are 023610004, 0236100002.  Mr. Nelsen appraised the plaintiffs' property and determined just compensation of $28,282 based on a before value of $3,110 per acre and an after value of $3,000 per acre.  Mr. Schulte based his just compensation determination of $9,800 on a before per-acre value of $3,460 and an after per-acre value of $3,430.  Mr. Nelsen's shape adjustment is 3.5%, Mr. Schulte's is 2%, and Mr. Matthews' is 3.60%.  The court awards Carl Schnoor and Sue Omestad $28,282 as just compensation.

Plaintiff F. William Beckwith (<u>Jenkins</u> parcels 76.A, 76.B, 76.D) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 0226200005, 0226200006, 0223300005.  Claim 76 involves two non-contiguous sites.  Parcels 76.A and 76.B are bisected, while parcel 76.D is not.  Mr. Nelsen's before value for all parcels is $3,110 per acre.  His after value for 76.D is also $3,110 per acre.  His after value for parcels 76.A and 76.B, $2,975, takes into account shape adjustment for these bisected parcels.  Mr. Schulte determines just compensation of $21,893 for parcels 76.A and 76.B, and $4,655 for parcel 76.D.  For all of the parcels, Mr. Schulte calculates just compensation of $8,976 based on a before value of $3,190 per acre and an after value of $3,230 per acre.  For parcels 76.A and 76.B, Mr. Nelsen's shape adjustment is 4.3%, Mr. Schulte's is 1%, and Mr. Nelsen's is

3.90%.  The court awards F. William Beckwith $21,893 for parcels 76.A and 76.B and

$4,655 in connection to parcel 76.D for a total of $26,458 in connection to this claim.

Plaintiffs Sharon Burt, Karen R. Huggans, Ronald Mayner, Beth Ann Roy, Steve

Roy, and Charles Hale (Adkins parcels 34.A, 34.B) owned land adjacent to and

underlying the former railroad right-of-way on the date of taking.  The plaintiffs' parcel

numbers are 802405200001 and 802405200002.  Mr. Nelsen appraised the plaintiff's

property and determined just compensation of $37,537 based on a before value of $2,730

per acre and an after value of $2,590 per acre.  Mr. Schulte based his just compensation

determination of $17,400 on a before per-acre value of $3,160 and an after per-acre value

of $3,110.  Mr. Nelsen's shape adjustment is 5.1% and Mr. Schulte's is 2%.  The court

awards Sharon Burt, Karen R. Huggans, Ronald Mayner, Beth Ann Roy, Steve Roy, and

Charles Hale $37,537 as just compensation.

Plaintiff Gonner Farms LLC (Adkins parcels 39.A, 39.B, 39.C, 39.D, 39.E, 39.F,

39.G, 39.H) owned land adjacent to and underlying the former railroad right-of-way on

the date of taking.  The plaintiff's parcel numbers are 812430300005, 812430300001,

812430101007, 812430151001, 812430101004, 812430101003, 812430101001 and

812430101006.  Mr. Nelsen appraised the plaintiff's property and determined just

compensation of $44,483 based on a before value of $3,250 per acre and an after value of

$3,120 per acre.  Mr. Schulte based his just compensation determination of $16,946 on a

before per-acre value of $3,170 and an after per-acre value of $3,160.  Mr. Nelsen's

shape adjustment is 4% and Mr. Schulte's is 1%.  The court awards Gonner Farms LLC

$44,483 as just compensation.

### D.      Commercial Parcels

There are five commercial parcels for which the parties dispute the proper measure of just compensation.[41]  Four of the parcels, <u>Jenkins</u> parcels 59.A, 59.H, 59.J, and 59.L are associated with one parent tract, a grain elevator, which is part of several irregular smaller parcels.  Mr. Nelsen calculated just compensation for these parcels to be $309,235.00.  Mr. Schulte calculated just compensation in the amount of $96,300.00.  The grain elevator parcels are located in the City of Minburn roughly 35 miles outside of Des Moines.

The fifth parcel, <u>Rasmuson</u> parcel 15 is a small nine-hole golf course located in Thornton, Iowa.  The former rail corridor is located adjacent to the south side of the golf course.  Mr. Nelsen calculated just compensation for the golf course as $10,500 and Mr. Schulte calculated just compensation as $2,800 for a total difference of $7,700.

### 1.      The Grain Elevator, <u>Jenkins</u> Claim 59

Mr. Nelsen testified that he used five comparable sales in the Iowa towns of Waukee and Grimes to appraise the grain elevator tract.  He explained that he chose comparables in Waukee and Grimes because those two towns, like Minburn, are located relatively close to Des Moines and draw labor from the Des Moines metropolitan area—

---

[41] At trial the plaintiffs moved to dismiss two additional commercial parcels, <u>Jenkins</u> parcels 61.B and 61.C.  <u>Jenkins</u> claim 61, associated with those parcels, is hereby **DISMISSED**.  Claim 61 is dismissed because of errors associated with the plaintiffs' double counting certain parcels associated with claims 59 and 61.  The plaintiffs' valuation of the parcels associated with claim 59 incorporates damage calculations for the now dismissed claim 61.  The government did not double count across the claims, meaning that the government's appraisal value for former claim 61 will be incorporated into claim 59.  As such, Mr. Schulte's just compensation calculations for claim 59 include his calculations previously broken out to claim 61.

an important consideration for buyers of commercial property.  He explained that he

adjusted the comparables downward by 10%-15% in recognition of Minburn's smaller

population and greater distance from Des Moines.  Mr. Nelsen also provided for

severance damages, noting that the taking resulted in a long, narrow parcel that was of

limited commercial value in the after condition.

Mr. Schulte testified that he selected comparable sales from the towns of

Ottumwa, De Soto, Clarinda, and Eldora, which he believed were more similar to

Minburn, though considerably farther from De Moines.  He testified that Waukee and

Grimes, the towns from which Mr. Nelsen selected his comparables, were not

comparable to Minburn.  In particular, Mr. Schulte explained that between 1980 and

2010, the populations of Grimes and Waukee had increased dramatically, while the

population of Minburn had declined, making use of comparables from Waukee and

Grimes unsupported:

| | Population Changes Between 1980 and 2010 | | | |
|---|---|---|---|---|
| **Area** | 1,980 | 1,990 | 2,000 | 2,010 |
| Minburn | 390 | 346 | 391 | 365 |
| Waukee | 2,227 | 2,512 | 5,126 | 13,790 |
| Grimes | 1,973 | 2,653 | 5,098 | 8,246 |

Census Population Table, DX 77(simplified to reflect only relevant information).  Mr.

Schulte testified that these numbers demonstrated that there was little or no demand for

non-agricultural development in Minburn and thus it was appropriate to pick towns with

population profiles similar to Minburn for comparative purposes.  He further noted that

the parcel's narrow, oblong shape would dissuade most potential buyers, thereby further reducing demand.  Finally, Mr. Schulte testified that Minburn is not subject to zoning restrictions and therefore potential buyers of commercial property would more likely elect to purchase property on the outskirts of town in any shape desired and closer to the highways, further reducing demand and value for the four grain elevator parcels.

The court finds Mr. Schulte's testimony more persuasive as to the proper valuation of the grain elevator-related parcels.  While the court finds credence in Mr. Nelsen's testimony that location plays a role in land valuations, there is no evidence of any development in Minburn over the last thirty years.  Further, the small size of Minburn and its general lack of zoning suggests, as Mr. Schulte testified, that commercial sales on undeveloped parcels in the outskirts of town closer to roadways would be preferable to developing the collection of disjointed parcels in the center of town.

Because the court finds Mr. Schulte's testimony and appraisal more persuasive, it adopts his valuations for the grain elevator-related parcels as follows:

Plaintiff Heartland Co-op (Jenkins parcels 59.A, 59.H, 59.J, 59.L) owned land adjacent to and underlying the former railroad right-of-way on the date of taking.  The plaintiff's parcel numbers are 0708157002, 0707279001, 0707230005, 0706400004.  Mr. Nelsen appraised the property as having a before value of $45,738 per acre and an after value of $45,738 per acre.  He determined that just compensation should be in the amount of $309,235.00.  Mr. Schulte determined a before per-acre value of the property of $15,000 and an after per-acre value of $12,500.  He concluded that just compensation

should be $66,300, which the court adopts here.  Just compensation shall be awarded to the Heartland Co-op in the amount of $66,300.

### 2.    The Golf Course, <u>Rasmuson</u> Claim 15

Mr. Nelsen and Mr. Schulte differed significantly in their approaches to appraising the value of the golf course in the before and after conditions.  The subject parcel is used as a nine-hole golf course.  The rail corridor sits adjacent to the south, running diagonally from northeast to southwest.  Mr. Nelsen testified that the land is best used as a golf course; however, if it were unimproved, the highest and best used would be for farmland.  At trial he testified that golf courses are typically valued on a per hole basis, which would include the undeveloped land encompassed by the easement.  Mr. Nelsen appraised the golf course in the before condition on a "per hole" basis and then converted this number into a per-acre value by first multiplying the computed per hole value by nine (the number of holes) and then dividing that number by the total number of acres including the rail road corridor, which amounted to $7,540 per acre.  He valued the golf course again on a per-hole basis in the after condition excluding the corridor but keeping the per-acre value at $7,540.  Mr. Nelsen testified that the more yards there are per hole, the more valuable the golf course becomes on a per-acre basis because of the increased flexibility in laying out the holes (e.g. longer fairways, more room between holes, etc.).  The extra fifty feet for the golf course, therefore, would have allowed for expansion of certain holes and would have given the course more flexibility.

Unlike Mr. Nelsen, Mr. Schulte appraised the land as if its highest and best use were agricultural and not commercial.  He noted in his report that much of the land

surrounding the golf course is farmland and that the corridor was not improved for use as a golf course.  Mr. Schulte testified that Mr. Nelsen's approach was inappropriate because it allocated the improved value of the golf course to the unimproved adjacent rail corridor in the before condition, including improvement such as the club house and other buildings on the land.  In essence, this increased the value of the before condition by distributing the value of the improved land onto the unimproved railroad corridor.  Mr. Schulte further testified that appraising the corridor as part of the golf course made little sense as evidenced by Mr. Nelsen's recognition that the trail easement did not change the per-hole value of the property from the before condition.  Mr. Schulte opined that if the golf course was looking to improve it could take any surrounding farmland and expand the course, noting that the corridor was properly appraised as farmland.

The court agrees with the government that Mr. Nelsen's valuation based on golf course use is inappropriate in this case.  His projection of the golf course's improved value onto the unimproved easement artificially inflated the value of the golf course in the before condition.  Moreover, the fact that no additional adjustments were made to the comparables in the after condition, with the reduced land area, suggests that the extra area for golfing represented by the right of way would not have increased the per-acre value of the golf course.  Instead, the only compensation Mr. Nelsen calculated was for the artificially inflated value of the land physically taken.  That is, Mr. Nelsen's projection of the golf course's improved value onto the unimproved easement artificially inflated the value of the golf course in the before condition and the court is persuaded that the corridor should be valued the same as the other land surrounding the course.

Mr. Schulte, however, undervalued the subject property by improperly including adjustments for changes in soil productivity, which the court has already rejected. Accordingly, the court adopts an adjusted average per acre price, using Mr. Schulte's comparable sales though factoring out adjustments made for alleged changes in soil quality:

Plaintiff Pleasant Valley Golf Club, Inc. (Rasmuson parcel 15) owned land adjacent to and underlying the former railroad right-of-way on the date of taking. The plaintiff's parcel number is 141910100200. The court concludes that just compensation should be $4,350 and awards that amount to the Pleasant Valley Golf Club, Inc.

## II.      CONCLUSION

Plaintiffs have established that they are entitled to just compensation in the amounts set forth above in this opinion and in Appendices A, B, and C to this opinion, along with interest from the date of taking. Final judgment is deferred until further order of the court. The parties shall have until **September 16, 2013** to file any objections the parties may have to the court's arithmetic as well as a joint status report detailing the next steps for resolving all of the remaining issues in these cases.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

**Appendix A**

Parcels for which the Parties Stipulated Compensation for
<u>Rasmuson v. United States</u>, 09-158L

| Claim No. | Just Compensation |
|---|---|
| 12 | $3,624.29 |
| 13 | $14,127.00 |
| 14 | $10,967.00 |
| 16 | $14,568.50 |
| 40 | $27,700.00 |
| **Total Stipulated Just Compensation** | $70,986.79 |

**Appendix B**

Parcels for which the Parties Stipulated Compensation for
Jenkins v. United States, 09-241L

| Claim No. | Just Compensation |
|:---:|:---:|
| 1 | $36,518.00 |
| 2 | $90,360.00 |
| 4 | $104,497.00 |
| 5 | $41,571.00 |
| 6 | $16,635.00 |
| 8 | $8,971.00 |
| 9 | $8,936.00 |
| 18 | $9,612.00 |
| 19 | $19,046.00 |
| 20 | $8,322.74 |
| 31 | $4,865.54 |
| 37 | $5,373.40 |
| 38 | $6,005.21 |
| 41 | $8,743.61 |
| 43 | $5,295.93 |
| 44 | $5,083.25 |
| 64 | $5,118.37 |
| 66 | $6,794.00 |
| 73 | $4,624.00 |
| 74/75 | $10,409.80 |
| 77 | $1,446.00 |
| 82 | $4,300.00 |
| 86 | $1,012.00 |
| 87 | $4,120.00 |
| 88 | $5,684.29 |
| 89 | $3,518.00 |
| 90 | $6,724.48 |
| 91 | $12,363.68 |
| 92 | $5,979.68 |
| 95 | $9,266.00 |
| 96 | $6,954.00 |
| 97 | $9,500.00 |
| 111 | $2,566.00 |
| 124 | $2,627.52 |
| **Total Stipulated Just Compensation** | $482,843.50 |

**Appendix C**

Parcels for which the Parties Stipulated Compensation for
<u>Adkins v. United States</u>, 09-503L

| Claim No. | Just Compensation |
|:---:|:---:|
| 31 | $64,718.38 |
| 32 | $1,309.35 |
| 33 | $7,917.57 |
| 35 | $19,734.87 |
| 36 | $6,320.67 |
| 40 | $175.00 |
| 41 | $9,480.00 |
| 42 | $1,680.00 |
| 43 | $6,220.00 |
| 45 | $780.00 |
| 46 | $2,210.00 |
| 47 | $770.00 |
| 48 | $7,080.00 |
| 49 | $390.00 |
| 52 | $17,205.00 |
| 54 | $16,820.60 |
| **Total Stipulated Just Compensation** | $162,811.44 |